Chase *v.* Ewing.

[MONROE GENERAL TERM, September 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]

————— • ○ • —————

STEPHEN J. CHASE, executor, &c. *vs.* JAMES EWING and MARY A. EWING.

•

" Advancement " and " advancements," are the terms used in the law dictionaries, and in our statutes, to designate money, or property, given by a father to his children, as a portion of his estate, and to be taken into account in the final partition or distribution thereof. · " Advances," is not the appropriate term for money or property thus furnished. The latter phrase, in legal parlance, has a different and far broader signification. · It may characterize a loan, or a gift, or money advanced to be repaid conditionally. *Per* JOHNSON, J.

A testator, by the third clause of his will, devised and directed as follows: " Whatever advances I have made to any of my children, or to the husbands of any of my children, for which any receipts or other evidences of indebtedness may be found among my papers after my decease, I hereby give and devise to my said children, to each one the advance made to each; my intention being by this that such receipt or other evidence of indebtedness,

shall not be collected or enforced against them, or either of them, who may have signed the same, but that the same be given up to that one of my children, who may have in person, or whose husband may have signed the same, the receipt or other evidence as aforesaid of each to each." *Held,* that the entire tenor and scope of the clause, showed clearly that the testator had in view not gifts and advancements previously made as such, but advances only, in the nature of loans, and for which he held vouchers whereby the claims could be enforced. And that it embraced, under the term "evidence of indebtedness," a mortgage given by one of the testator's children with her husband, for money borrowed of the testator.

*Held, also,* that the mortgage purporting on its face to be given "in consideration of the sum of $2166, to them [the mortgagors] duly paid," and reciting, in the condition, that "this grant is intended as a security for the payment of $2166, payable in one year from the date hereof, with interest, which payment, if duly made, will render this conveyance void," it was of itself evidence, upon the trial, not only of the indebtedness, but also of the default in payment; and was therefore the identical thing described in the third clause of the will—an evidence of indebtedness for "advances;" and could not be enforced.

*Held, further,* that in an action by the executor of the mortgagee, to foreclose such mortgage, the plaintiff could not be allowed to give in evidence the declarations of the testator, for the purpose of proving that the indebtedness secured by the mortgage was a loan and not an advancement to the defendants, or one of them.

And that inasmuch as, had the action been brought by the testator in his lifetime, his parol admissions, or declarations, that the money had been furnished by way of advancement, and not as a loan, would have been inadmissible, on the ground that they would contradict the plain terms and legal intendment of the mortgage, they were equally inadmissible in an action of foreclosure brought by his executor.

Conversations and declarations of a testator, in favor of the executor are never allowable in actions between the executor and third persons, unless under some peculiar circumstances.

APPEAL from a judgment entered upon the report of a referee. The action was brought by the plaintiff, as executor of Stephen Chase, deceased, to foreclose a mortgage given by the defendants to the testator, to secure the payment of $2166, with interest.

The following facts were found by the referee:

That on or about the 2d day of April, 1851, the defendants, James Ewing and Mary A. his wife, executed, acknowledged and delivered the mortgage in the complaint

mentioned to the plaintiff's testator, Stephen Chase, therein named. That the said James Ewing on the 2d day of April, 1851, paid the said Stephen Chase the sum of $151.62 on said mortgage, being the interest for one year thereon, and which became due on that day. That on or about the 31st day of May, 1852, the said Stephen Chase made, published and declared his last will and testament in writing, bearing date on that day, and containing a clause of which the following is a copy:

" *Third,* Whatever advances I have made to any of my children, or to the husbands of any of my children, for which any receipt or other evidences of indebtedness may be found among my papers after my decease, I hereby give and devise to my said children the advance made to each. My intention being by this that such receipt or other evidence of indebtedness shall not be collected or enforced against them, or either of them who may have signed the same, but that the same be given up to that one of my children who may have in person, or whose husband may have signed the same, the receipt or other evidence as aforesaid of each to each." That the said Mary A. Ewing is one of the children of the said Stephen Chase, and that at the time of the execution and delivery of the said mortgage the said James Ewing was and still is the husband of the said Mary A. Ewing. That on the 2d day of February, 1853, the said James Ewing and Mary A. his wife, conveyed to the said Stephen Chase, for a consideration of $1000, in such conveyance expressed, a part of the mortgaged premises in the said mortgage described, and known and distinguished as lots Nos. 57 and 58, in the village of Dresden. That on the same day the said Stephen Chase conveyed the said lots Nos. 57 and 58, to the said Mary A. Ewing for a consideration of $1000 in said conveyance expressed, and released the said lots Nos. 57 and 58 from the lien and operation of said mortgage. That on the said 2d day of February, 1853, the said

Stephen Chase executed an indorsement upon the said mortgage of which the following is a copy:

" $500. Rec'd on this mortgage five hundred dollars in this way. Desiring to give my daughter, the wife of James Ewing, within named, five hundred dollars, I have taken from them a deed of two of the lots within mentioned, and have conveyed the same to my said daughter Mary A. and have released the said two lots, 57 and 58, from the operation hereof, and the consideration of said deed is this gift and $500, before this given to her.

Dated, Feb. 2d, 1853."

That no payments other than the said $151.62 so paid by said James Ewing to said Stephen Chase and the said sum of $500 mentioned in said endorsement, have ever been made on the said mortgage.

That prior to the 15th day of April, 1853, the said Stephen Chase died in the county of Ontario and state of New York, leaving his said last will and testament unchanged and unrevoked. That on the said 15th day of April, 1853, the said last will and testament was proven before, and admitted to probate by the surrogate of said county of Ontario, and letters testamentary thereon granted and issued by him to the plaintiff as sole executor thereof, and that thereupon the plaintiff qualified and entered upon the discharge of his duties as such executor. That the said mortgage was not a receipt or an evidence of indebtedness given for any advance or advancement made by the said Stephen Chase to the said James Ewing and Mary A. his wife, or either of them. That the sum of $2166 mentioned in the condition of said mortgage was not, nor was any part thereof, an advance or an advancement made by the said Stephen Chase to the said James Ewing and Mary A. his wife, or either of them. That the sum of $3458.07 is now unpaid on the said mortgage, all of which has become due.

The referee's conclusions of law were as follows:

That the said mortgage is not one of the receipts or other evidences of indebtedness, mentioned and described in the third clause of the said last will and testament of the said Stephen Chase, deceased. Nor was the amount mentioned in the condition of the said mortgage, or any part of such amount an advance or advancement made by the said Stephen Chase, to the said James Ewing and Mary A. his wife, or either of them. That the said mortgage was not in or by said last will and testament canceled or invalidated. That upon the probate of the said last will and testament and the issuing of letters testamentary thereon to the plaintiff as sole executor thereof, the said mortgage became and was and still is a valid asset in the hands of the plaintiff as such executor. That the said plaintiff is entitled to judgment. That the defendants in said action and all persons claiming under them subsequent to the commencement of said action, be barred and foreclosed of all right, claim, lien and equity of redemption in the whole of the said mortgaged premises, except the two lots, Nos. 57 and 58 in the village of Dresden, so released as aforesaid. That the said premises, except the said lots, Nos. 57 and 58, be sold according to law. That the moneys arising from such sale be brought into court. That the plaintiff be paid the said sum of $3457.08, so unpaid on said mortgage, with interest on said sum to the time of payment, together with his costs and expenses in this action, so far as the amount of such moneys, properly applicable thereto will pay the same; and that the said defendant James Ewing, pay the plaintiff any deficiency which may remain unpaid of the said costs and expenses after applying the said moneys as aforesaid. And the referee directed that judgment be entered accordingly.

On the hearing, before the referee, the plaintiff offered to prove the declarations of Stephen J. Chase, the testator, which testimony was objected to by the defendants, and

the objection overruled and the evidence received; to which ruling the defendant excepted.

At the close of the plaintiff's testimony the defendants moved that the plaintiff's complaint be dismissed; which motion was overruled, and the defendants excepted.

The defendants appealed from the judgment.

*D. B. Prosser*, for the appellants.   I. The referee erred in refusing to dismiss the plaintiff's complaint, at the close of the plaintiff's evidence.   Because, 1. The mortgage was evidence of an indebtedness within the words of the will of the plaintiff's testator.   Before the plaintiff could recover on the same, he should have shown that the mortgage was not given for advances made by the deceased to Ewing.   2. The authority of the plaintiff having been wholly derived from the will, and that expressly declaring that any evidence of indebtedness which should be found among his papers at the time of his death *should not be collected*, but should be given up, the right of the plaintiff to enforce the collection of the mortgage depended wholly upon the question, whether the mortgage was or was not given to secure advances made by the deceased to Ewing or his wife.   3. There being nothing on the face of the mortgage showing what the consideration was, or how the debt, to secure which it was given, arose, the plaintiff was bound to show that it had not been given to secure advances, or, in other words, what the consideration was, especially as the mortgage bore date prior to the will.   4. Unless there was a debt, there could be no mortgage, and the mortgage must furnish the evidence of the indebtedness.   (4 *Kent's Com.* 159, 193.)   The mortgage may not furnish evidence of a personal obligation, yet it must be evidence of a debt or obligation.   Here the mortgage expressly provides that, upon the payment of the sum of $2166 and interest, it was to become void, the debt being the principal thing.

When that is discharged, the mortgage ceases to be operative. Money loaned is money advanced, in the strict sense of the term advanced. The words used by the testator are to receive the proper meaning, in giving construction to the will, unless there is something limiting the meaning of the words. Here there is not any thing of the kind. On the contrary, the words used are the most sweeping and comprehensive that could have been selected by the testator, being " *other evidences of indebtedness.*" A simple receipt for advances made, by way of advancement or portion, would not afford any evidence whatever of any debt or obligation. It is, therefore, manifest, that the testator meant something more than such a receipt. He must have intended what the words import, a debt or obligation which could be enforced and collected by action. The plaintiff having failed to show that the mortgage in question was not given for money advanced by the testator to Ewing or his wife, his complaint should have been dismissed by the referee.

II. The referee erred in receiving evidence of the declarations of the deceased, the plaintiff's testator. Because, 1. They were the same as evidence of the declaration of the plaintiff, made in the absence of the defendants, the plaintiff, as executor, simply representing the deceased and his estate. 2. The declaration of a former owner of a chattel, is never admissible in evidence, although such former owner may be dead at the time. (*Beach* v. *Wise,* 1 *Hill,* 612. *West* v. *Hurd,* 7 *Cowen,* 752. *Paige* v. *Cagwin,* 7 *Hill,* 361.) 3. If the evidence was offered or given for the purpose of explaining the meaning of the words used in the will, they were clearly inadmissible for that purpose. There is no ambiguity nor uncertainty in the words, and they must be presumed to have been used by the testator, with full knowledge of their force and effect. (*Williams* v. *Crary,* 4 *Wend.* 451. *Mann* v. *Mann,* 1 *John. Ch. R.* 231. *Cromer* v. *Pickney,* 3 *Barb. Ch. R.* 466. *Hone* v. *Van*

*Schaick*, 3 *Comst.* 538.) In *Hone* v. *Van Schaick*, (*supra*,) Gardner, judge, on page 540, says: " The *language of the testator* should be construed according to its primary and ordinary meaning, unless the testator has manifested his intention, in the will itself, to give a different and more extended signification, and this rule is affirmed by all the authorities. I add, such words cannot be restricted nor enlarged by parol evidence of the testator's intention. *Williams* v. *Crary*, (4 *Wend.* 443.) It therefore follows, that the evidence of the declarations of the testator, objected to by the defendants, should have been excluded.

III. The referee erred in finding, as a conclusion of fact and of law, that the mortgage was not an evidence of indebtedness, as mentioned and described in the third clause of the will of Stephen Chase, deceased; because, it will be remembered, the words of the will are receipts or other evidences of indebtedness, and the evidence, so far as there was any, for what the mortgage was given, is that it was given for money advanced by the deceased to Ewing. There is not a particle of evidence tending to show for what the mortgage was given, aside from the evidence, on the part of the defendants, that it was given for money advanced to Ewing to help him.

IV. The referee erred in finding, as a conclusion of law, that the amount mentioned in the mortgage, or any part of it, was not for advance or advancement by the deceased to Ewing or his wife. The evidence shows, most conclusively, the sum mentioned in the mortgage was for money advanced to Ewing by the deceased, although the referee has found that the sum mentioned in the condition of the mortgage was not for money advanced, or for an advancement, yet he has wholly failed to find what it was given for, or how the debt arose. If the referee had found what the sum mentioned in the mortgage was for, the court then might have been able to judge, from such finding, whether it came within the third clause of the will. It is

Chase *v.* Ewing.

not claimed or pretended that it was given for an advancement, by way of portion to Ewing or his wife. The language of the will does not require that it should have been such, in order to have been discharged thereby. Such an advancement creates no legal obligation, upon which an action could be sustained, and no necessity for declaring in the will that it should not be collected.

V. The referee erred in sustaining the objection, on the part of the plaintiff, to the question put to the witness Ewing on the part of the defendants, and in excluding the evidence offered on the part of the defendants. The offered and rejected evidence does not fall within any of the provisions of the 399th section of the Code. It was simply to prove that the mortgage in question was made, executed and recorded before the deceased had knowledge of its existence. This was neither proving a transaction nor communication had between the witness and the deceased. The witness had already testified, without objection, that he executed that mortgage, that it was drawn by him, and that it was a voluntary act on his part. The offered and rejected evidence was necessary, to explain what had been testified to without objection, and was competent for that purpose, if no other.

*Charles J. Folger*, for the respondent. I. It is apparent that the burden of proof is upon the defendants. It is for them to show that this mortgage is an advancement. The mortgage is *prima facie*, a valid asset in the hands of the executor. It is for the defendants to show that it is within the language of the will. They must establish either from the plain reading of the will, or extrinsic of it, that the testator meant to give this mortgage to his daughter, the defendant, Mrs. Ewing.

II. It is quite certain that there is nothing in the will itself, which of necessity gives this mortgage to her. She cannot, without proof outside of the language of the will,

Chase v. Ewing.

show to a court that the testator intended to give her this mortgage. To bring the mortgage within the words of the will, it must be an advance. More than that, it must be an advance, for which a receipt or evidence of indebtedness shall be found among the testator's papers. 1. There is nothing in the will; there is nothing in the mortgage to show that it was an advance to Ewing. (*Van Alstyne* v. *Van Alstyne,* 28 *N. Y. Rep.* 378.) 2. If it should be granted that it was an advance, still, there is nothing in the mortgage making it a receipt or an evidence of indebtedness. Hence it is not an advance for which a receipt or evidence of indebtedness is found among the papers of the testator. It is submitted that two things must exist and concur, before this mortgage can be said to come within the provisions of the will. It must be an advance. It must, also, be an advance for which a receipt or evidence of indebtedness is found. Clearly, this mortgage is not a receipt. It does not comply with any legal idea, or common notion, of the instrument known as a receipt. It is not an evidence of indebtedness. It is simply a mortgage—a conveyance with a condition. It does not create any indebtedness; it does not acknowledge that any exists. There is not a word or phrase in it upon which any action could be founded against Ewing, in which to charge him for the amount of money, or any part of it, named in the condition. (*Culver* v. *Sisson,* 3 *Comst.* 264. *Weed* v. *Covill,* 14 *Barb.* 242. *Hone* v. *Fisher,* 2 *Barb. Ch.* 559. *Bunner* v. *Storm,* 1 *Sandf. Ch.* 357.) As a question of fact, the referee has found, that the mortgage is not a receipt or an evidence of indebtedness. He has also found as a question of fact that the money secured by the mortgage was not an advance.

III. Nor can the defendants rely upon proof, oral or otherwise, *aliunde* the will and the mortgage, to show that the money mentioned in the mortgage was an advance. 1. Such proof is not admissible in the case. (*Cromer* v.

Chase *v.* Ewing.

*Pinckney*, 3 *Barb. Ch.* 466. *Waterman* v. *Whitney*, 1 *Kern.* 157–165. *Hyatt* v. *Pugsley*, 23 *Barb.* 285.) There is nothing in the will which needs explanation by parol proof. Its terms are explicit. Its description is precise. The only question is, does the mortgage come within its terms and answer its description? The testator meant to give to his children the advances he had made to them, when and only when, such advances were shown by written paper to be found among his effects. He meant that not only should the paper be found among his effects, but that it, and it alone, should declare that it was given for an advance. Now, to take a paper which shows no such thing, and to eke it out by parol proof, is to add to the words of the will not only, but is to vary the effect of the mortgage. Parol proof is not admitted to explain an obscurity in a will where that obscurity is purely instrumental. (23 *Barb.* 297.) If it is claimed that the parol proof is offered, not to alter or explain the will, but to show that this mortgage was meant by the will, and pointed to by it as an advance, the answer then is, grant that it is in fact an advance, grant that the parol proof will show it so, still it is not every advance that passes by the will, but only advances for which there shall be found receipts or evidences of indebtedness. And if parol proof is needed to show that this mortgage was for an advance, it must be for the reason that the mortgage itself contains no words expressive of that fact. And if so, then the parol proof must add to or vary the mortgage; must put into it words, which the will requires should be found there without extrinsic proof.

There is no ambiguity in the will such as to require extrinsic proof to explain it. The terms of the will are explicit. They indicate papers (receipts and evidences of indebtedness,) well known to legal and business transactions. And the proofs in the case show that there did exist among the papers of the testator, just the kind of

instruments which the unvaried terms of the will would indicate. (*Smith* v. *Smith*, 1 *Edw. Ch.* 189.)  2. And further even if parol proof is admitted of the declarations of the testator, they cannot be applied to the mortgage so as to make it an evidence of indebtedness and then bring it within the terms of the will.  It is apparent that the mortgage must be, in and of itself, a receipt or an evidence of indebtedness, or it is not embraced within the terms of the will. Parol proof may be able to show that the mortgage was given for a loan, was given for any indebtedness, but this does not make the mortgage itself an evidence of indebtedness.  It could show no more than that an indebtedness existed, and that the mortgage was taken for it.  But it cannot transmute the mortgage from a mere pledge, or security on real estate, for the payment of an indebtedness, into an instrument, which shall in and of itself evidence and express the fact of that indebtedness.  It is after all the parol proof and it alone, which evidences the indebtedness, and the mortgage is, upon that point, as mute and inexpressive as ever.  The parol proof cannot be interpolated into the mortgage so as to become a part of it, and to be read with it, and until this is done, the mortgage does not and cannot become either a receipt or an evidence of indedtedness.

IV.  But even on the extrinsic evidence, the preponderance of the acts and declarations of the testator is with the plaintiff that it never was the intention of the testator to bequeath this mortgage to Mrs. Ewing.  1. The receipts and evidences of indebtedness which are produced by the plaintiff, and which were found among the papers of the testator.  These show that there did, when the will was made, exist papers which corresponded exactly with the terms of the will, and with the idea in the mind of the testator.  The provision in the will for his daughter, Mrs. Bowers.  She had received of him only $200 as the receipts show.  So in the will he provides that she shall

have $800 more than the rest out of the general division of his estate, making her sum $1000, equal to that of Mrs. Tuttle and about that of Mrs. Warner. And as to Mrs. Ewing, from whom there is no receipt, he made out her amount by release of part of mortgaged premises. 2. The doings of the testator in his lifetime with this very mortgage. (*a.*) On 2d April, 1852, he received and indorsed the interest. This was past a year from its date, and the amount received was just the interest for one year. He thus treated it as a valid subsisting security in his hands, and as a source of annual income to him. (*b.*) On the 2d February, 1853, he deals most significantly ·with this mortgage. And bear in mind that this was after the will was made, which was 31st May, 1852. In February, 1853, with full knowledge of the provisions of the will, with the expressed desire of giving to his daughter, Mrs. Ewing, $500 more, so as to make his gifts to her $1000, he releases from the mortgage two parcels of the land described in it, and has them conveyed to her separately. But why give her two of the lots in the mortgage, if by the will he had already given her the whole mortgage debt, more than four times the value of the two lots. The reason is plain. He had not yet given her $1000 to make her equal with her sisters. No receipt is found from her. In this way, then, he makes *her advance.* And note that when the will in its third article speaks of advances *I have made ;* it means advances which the testator *had made before its date.* (*Van Alstine* v. *Van Alstine, above cited.*) So that the dealings of the testator with this mortgage subsequent to the date of this will, are very significant. 3. The oral testimony preponderates also in favor of the plaintiff.

V. The referee has found the facts to be, that the mortgage was not a receipt, or evidence of indebtedness given for an advance or advancement, nor was the money mentioned in the condition of it, nor any part of it, an advance or advancement, made by the testator to Ewing and his

wife, or either of them. . This precludes the necessity of discussion upon the testimony.

VI. But it is claimed that the referee who tried the cause erred in admitting, and that the referee who decided it, erred in considering the proof of the plaintiff of the declarations of the testator of the plaintiff in regard to this mortgage. As to this it is to be observed, 1. That this evidence on the part of the plaintiff was solely in rebuttal of evidence introduced by the defendant. Although it was in reality introduced to the referee before that of the defendant, it was in anticipation of the testimony of the defendant to be obtained and used on commission. It appears from the case that the plaintiff rested upon introducing his documentary evidence. The defendants then offered the deposition of Henry Bower and Margaret Bower taken on commission. These were ruled out on a *technical objection*, and it was in anticipation of the defendants' case, and to rebut the same, that the plaintiff's testimony of declarations was given. If the testimony by the defendants, of the testator's declarations, is competent, was not like testimony by the plaintiff? It is attempted to distinguish by saying that such testimony by the plaintiff is in effect the giving in evidence of one's declarations in his own favor, while such testimony from the defendants is the giving in evidence of declarations of one against himself, and adverse to his interest. But this is not sound. Up to the testator's death this whole matter was in his power, and a slight act of his could have obliterated this third article of his will, or canceled the whole instrument, and then the mortgage would certainly have been an asset in the hands of an executor or administrator. Hence his declarations cannot be said to be for or against his own interest. With the whole subject matter in his own power, no such question can arise. (*Thomas* v. *Thomas*, 6 *T. R.* 671. *Williams* v. *Crary*, 8 *Cowen*, 246, 248. *Trimmer* v. *Bayne*, 7 *Vesey, Jr.* 508. *Smith* v. *Montgomery*, 5 *Mon.* 502.)

2. But if it is true, that the party to the action, who is the privy of the testator, is precluded from giving in evidence the declarations of the testator, is it not the defendants rather than the plaintiff who are thus affected? The plaintiff .represents the estate, the creditors of the estate, all the residuary legatees. The defendants claim as the particular and immediate legatees of the testator, and they are chargeable with all the proof which can be made from his declarations, because these declarations affect the very instrument which they claim to take as legatees from him, and thus to divert from the general fund of the estate. 3. But the declarations of the testator are not to be admitted for or against the plaintiff or the defendants on any such principle. They are to be admitted, if at all, to explain an ambiguity in the will, and in that case are to be admitted for one party as well as the other. (1 *Phil. on Ev.* (*C. & H. Notes*,) *pp.* 314–317, *n.* 104, *and cases there cited.* 2 *id.* 768. *Betts* v. *Jackson,* 6 *Wend.* 173.)

VII. Further, it is to be noted that the plaintiff is an executor seeking to enforce an asset of the estate he represents. The defendants are resisting his claim on the ground that they are legatees of this asset. But legatees cannot claim in priority to creditors. The executor represents the creditors and is acting for them. Creditors have the first right to the estate. Non-constat in this case that the assets of the estate are sufficient to pay the debts of the estate, and until that appears, the legatee cannot claim. Until the debts are paid, legatees cannot claim their legacies. Nor can debtors to the estate ask to be absolved from payment of their debts to it, until it appears that the estate can pay its debts. If by "*advance*" in the will, it is claimed by the defendants is meant a *loan*, then it was a loan until the death of the testator, and his will by his death became operative. But the testator could not by making loans, and then in his will making them legacies, defeat the rights of his creditors to have the assets of his

Chase *v.* Ewing.

estate applied to the payment of their debts. Before the defendants can resist the collection of this mortgage they must show that there are assets enough, other than those effected by this clause of the will, from which the executor may pay the debts of the estate. (3 *R. S.* 171, *5th ed.* § 15. *Margin* 2 *R. S.* 84, 14.) Could the defendants maintain an action against the plaintiff as executor, to compel him to cancel and surrender this mortgage, without averring and showing that all debts against the estate were paid, or that the executor had funds sufficient to pay them? They could not. (*Tole* v. *Hardy*, 6 *Cowen*, 339.) How, then, can they defend without making the same proof?

VIII. From all these reflections it follows that the defendants cannot maintain their defense. The plaintiff should have judgment of foreclosure and sale according to the prayer of the complaint. There is also the general prayer for relief, and under this the judgment should give the costs of the litigation to the plaintiff, against the defendant James Ewing personally. It may be that the property mortgaged will not pay the mortgage debt and the expenses of sale, and it would seem equitable as there is no personal security, so that there can be no judgment over for the deficiency, that the judgment should give costs to the plaintiff against the defendant James Ewing, personally. It is he that has by an unfounded defense made the costs. (11 *Barb.* 350. *Park* v. *Peck*, 1 *Paige*, 477.)

*By the Court,* JOHNSON, J. "Advancement" and "advancements" are the terms used in the law dictionaries, and in our statutes, to designate money or property given by a father to his children, as a portion of his estate, and to be taken into account in the final partition or distribution thereof. "Advances" is not the appropriate term for money or property thus furnished. The latter phrase, in legal parlance, has a different and far broader signifi-

cation. It may characterise a loan or a gift, or money advanced, to be repaid conditionally. "Lent and advanced" was the language of the old common count, in assumpsit, for money loaned or advanced, to be repaid.

Taking the whole of the third clause of the will into consideration, it would seem pretty clear that the testator did not intend to speak of advancements made to his children, but of advances for which he held "receipts or other evidences of indebtedness," which might be found among his papers at his decease. If the claims, thus spoken of, had been advancements, there could have been no evidences of debt existing in reference to them, for an advancement, creates no debt to the person making it, and in all its features, and in its very nature, is distinguishable from a debt or an indebtedness. Again, these "advances" are given as bequests, by the very terms of the will : "I hereby give and devise to my said children the advance made to each." This clearly implies that the thing given was something not before given or disposed of, which belonged to him, and which, if not so given, would go to his executor. And to make this more clear, he says : "My intention being by this, that such receipt, or other evidence of indebtedness, shall not be collected or enforced against them, or either of them, who may have signed the same, but that the same be given up," &c.

Here it is, in express terms, that "evidences of indebtedness," for "advances," are not to be enforced, but are to be given up to that one of the children who may have signed the same. In short, the entire tenor and scope of the third clause shows clearly that the testator had in view not gifts and advancements, previously made as such, but advances only in the nature of loans, and for which he held vouchers, whereby the claims could be enforced. It is claimed, by the plaintiff's counsel, that the mortgage in question was neither a receipt for a loan

or advance of money, nor an evidence of indebtedness. But that it was, and is, an evidence of indebtedness, seems too clear for argument. It purports, on its face, to be given " in consideration of the sum of twenty-one hundred and sixty-six dollars, to them duly paid." And, in the condition, it is recited, that " this grant is intended as a security for the payment of $2166, payable in one year from the date hereof, with interest, which payments, if duly made, will render this conveyance void." It was, of itself, evidence upon the trial, not only of the indebtedness, but, also, of the default in payment. It was, therefore, the identical thing described in the clause of the will in question—an evidence of indebtedness for " advances." It is assumed, on the part of the plaintiff, that it was, and had been, the intention of the testator to advance all his children equally, but nothing of that kind appears in any part of the will. It is only by going entirely outside the will, that any thing is made to appear indicating such an intention in the mind of the testator at any time. The will is plain, upon its face, that the testator designed and intended to give to each child all advances he had made, by which an indebtedness had been created, and for which evidences of such indebtedness might be found among his papers. If there is any ambiguity about it, such ambiguity is created by the extraneous evidence which was introduced before the referee. It follows that the mortgage in question cannot be enforced. There was no evidence or suggestion, before the referee, that the avails of the mortgage were needed to pay debts.

The plaintiff was allowed to give, in evidence, the declarations of the testator, for the purpose of proving that the indebtedness secured by the mortgage was a loan, and not an advancement, to the defendants, or one of them. To this evidence the defendants objected in due time, and excepted to the ruling admitting it. This ruling was clearly erroneous. The conversations and declarations of

Chase *v.* Ewing.

the testator, in favor of the executor, in actions between him and third persons, are never allowable, unless under some peculiar circumstances, forming an exception to the general rule. The evidence here offered was not within any exception. It was upon the main issue in the case, and clearly was incompetent evidence for the plaintiff. For this error, alone, the judgment should be reversed.

Whether upon this issue, as to whether the money was in fact furnished the defendants, by way of advancement or otherwise, the defendants are entitled to use the admissions and declarations of the testator, in their behalf, against the plaintiff, should, perhaps, be considered here, in view of the new trial before the same or another referee. The question does not, necessarily, arise on this appeal, although it was raised on the trial, by the plaintiff.

It seems clear that, had the action been brought by the testator in his lifetime, his parol admissions, or declarations, that the money had been furnished by way of advancement, and not as a loan, would have been inadmissible, on the ground that they would contradict the plain terms and legal intendment of the mortgage. If such admissions could not have been used as evidence against the testator, had he brought the action in his lifetime, it is difficult to see how they can be properly used in this action, for the same reason. It follows, from these views, that the judgment must be reversed, and a new trial ordered, with costs to abide the event.

[Monroe General Term, September 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith*, Justices.]