Dawson *v.* Macknet.

JACOB H. DAWSON, JR., appellant,

*v.*

THEODORE MACKNET et al., surviving exrs. &c., respondents.

Bonds and mortgages and promissory notes, in the usual form, given by a son to his father, are evidences of debts, and not of advancements, unless there be proof that they were intended to be advancements.

Appeal from decretal order of Essex orphans court.

*Mr. G. W. Hubbell,* for appellant.

*Mr. J. W. Taylor* and *Mr. J. R. Emery,* for respondents.

THE ORDINARY.

Jacob H. Dawson, senior, deceased, who died July 9th, 1882, by his will, dated January 28th, 1875, gave to the appellant, one of his sons, one-eighth of the residue of his estate. On the 1st day of April, 1878, the appellant received from his father $10,000, and gave to him his bond and mortgage of that date for the amount, payable in one year, with interest. The mortgage states that it was given to secure the payment of the appellant's bond to the testator, of even date with the mortgage, conditioned for the payment of $10,000, in one year, with interest. After the death of the testator the bond was not found among his papers, and the appellant, at the request of the executors, executed another one of the same description, tenor and terms, to supply its place. On the 21st of February, 1880, the appellant received from the testator the further sum of $8,000, for which he gave him his bond and mortgage of that date, payable in one year, with interest. On the 4th of October, 1881, he received from the testator the further sum of $2,200, for which he gave him his promissory note of that date, payable to the testator's order, on demand, for value received, at the maker's office,

No. 363 Halsey street, in Newark.   On the 13th of April, 1882, the testator endorsed, for the accommodation of the appellant, the note of the latter of that date for $5,000, at four months, payable to the order of the testator; and, on the 12th of May following, he endorsed another note of the appellant for the accommodation of the latter, of that date, for $5,000, at four months, payable to the order of the testator.   Those two notes for $5,000 each were discounted by the National State Bank of Newark, at the request of the appellant, who received and applied to his own use the proceeds thereof.   The notes did not mature until after the death of the testator, and they were paid by his executors out of his estate.   The appellant paid interest upon the $10,000 bond and mortgage up to July 1st, 1882, and, on the other bond and mortgage, up to February 21st, 1882. He claims that these various instruments—the bonds and mortgages and notes, including those endorsed for his accommodation—were all advancements made to him by the testator on account of his residuary share of the latter's estate, and were not intended to be evidences of indebtedness on his part to the testator, or to his estate.   The orphans court decreed that the advances in question created debts from the appellant to the testator, and that the payment of the two $5,000 notes created a debt from the appellant to the testator's estate, and that any dividends of the estate that should become due to the appellant should be applied first to the payment of principal and interest upon the notes, and next to the principal and interest of the bonds and mortgages, and then to any other unsecured debt besides the notes due from the appellant to the estate.

That the two $5,000 notes were not intended as advancements is clear.   They were renewals of other notes, the originals of which were made by the testator for the accommodation of the appellant.   The notes thus made or endorsed for the accommodation of the appellant, whether made by him or by the testator, were always entered in the appellant's books as notes payable by him.   The notes in question—those which were unpaid at the testator's death—were not made by the testator, but were merely endorsed by him, and his liability thereon was a merely contin-

gent liability. The notes, as already stated, did not mature until after his death, and they were then paid by his executors. There is no evidence showing, or tending to show, that the testator gave the endorsements on account of the appellant's interest in his estate.

And so, too, in regard to the note for $2,200. So far as appears, it was given to secure a loan of so much money from the testator to the appellant, and the money was advanced without any reference to the residuary legacy.

The bonds and mortgages were made and taken, as was the note just mentioned, precisely as they would have been made and taken had the advances of money, the payment of which they purport to secure, been made by the testator with the full intention of requiring and enforcing, if necessary, the payment thereof, as a loan strictly, and with no intention to make an advancement. An advancement creates no debt to the person making it, and in all its features and in its very nature is distinguishable from a debt or indebtedness. Per Johnson, J., in *Chase* v. *Ewing, 51 Barb. 597*. In the absence of evidence of intention on the part of the testator that the money was to be an advancement, the bonds and mortgages and note are evidence of debt and not of advancement. *Speer* v. *Speer, 1 McCart. 240 ; Batton* v. *Allen, 1 Hal. Ch. 99 ; Bruce* v. *Griscom, 9 Hun 280, 70 N. Y. 612 ; High's Appeal, 21 Pa. St. 283*. The case of *Wanmaker* v. *Van Buskirk, Sax. 685*, in which it was held that there was an advancement, although a bond for the repayment of the money was given, was (as was said in *Batton* v. *Allen*) decided upon the peculiar circumstances of the case.

But to consider the testimony which is claimed to be evidence of advancement. There is no evidence at all that the $2,200 were given as an advancement. And the evidence that the testator intended to advance to the appellant, on account of his residuary legacy, the money for which he took the bonds and mortgages, is not convincing. It is as follows: MacDonald, who was the appellant's book-keeper up to November, 1884, says he has heard the testator " say, in so many words, a number of times, that it was merely done—he did

not keep any records himself, and wanted them to appear among his papers, and that at his, the testator's, death they [the mortgages] would be the appellant's; that at his, the testator's, death the interest would stop; that the appellant would have no more interest to pay." He says that he remembers that on one occasion the testator said that in forty-eight hours after he would be under the ground the appellant would have $50,000 coming to him, and would have no interest to pay; and that on an occasion when the appellant, objecting to paying the interest, said that it was "eating him out of house and home;" the testator said, "As soon as I am gone your interest will stop." Mr. Hixson, who was a creditor of the appellant, testifies that the testator said that the mortgages would never bother the appellant, that they would not have to be paid, but that the appellant must pay him interest so long as he, the testator, should live, but that he did not expect him to pay him the mortgages. Hixson says he is not sure that the testator used the word "pay," but he says he gave him, Hixson, to understand that the mortgages were not likely to trouble the appellant. He further says that on another occasion when the appellant asked the testator to give up the mortgages to him, and take from him an agreement to pay the interest, the testator declined, saying that it did not make any difference about the mortgages; that all the appellant had to do was "to pay him the interest so long as he (the testator) should live, and when he was gone it would stop, and the mortgage is paid." David A. Hall says that the testator said to him that the mortgages did not amount to anything to the appellant; that they were merely memoranda that he, the testator, retained against the appellant, and that at his, the testator's, death "it would wipe the thing out," or something to that effect. In all this there is no evidence of advancement; but, on the contrary, the testimony shows that the testator regarded the mortgages as valid claims against the appellant, not only for the interest, but for the principal also. When the appellant proposed to him, in the presence of Hixson, to give up the mortgages, and take an agreement instead thereof, for the payment of interest only, he refused. What he meant by what he said

Dawson v. Macknet.

was that the appellant, at his, the testator's, death, would be enabled to pay the mortgages off out of his share of the estate, which share, it seems, the testator estimated at $50,000. But he manifestly intended to hold a claim for the money for which the mortgages were given upon the appellant and the mortgaged premises so long as he lived. Had there been occasion, or had he been inclined to do so, he might have collected the money, and, of course, might have made such disposition of it as he saw fit. It is quite clear that he did not intend to part with his property in it so long as he lived, and, indeed, he never did part with it, but held it up to the time of his death. The fact that he referred to the gift which he had made to the appellant in his will (the gift of a share of his residuary estate) as a means of paying off the mortgage, did not make the transactions under consideration an advancement. Had the testator brought an action upon the bonds, or suit for foreclosure upon the mortgages, the appellant could not have defended himself therein by the claim now made. The statements of the testator now relied upon would not have been admissible. The order appealed from will be affirmed, with costs.