Genet *v.* Lawyer.

The judgment must be affirmed, with costs.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]

———— • ○ • ————

MARY GENET, Executrix &c. *vs.* NICHOLAS LAWYER and FREDERICK LAWYER.

In an action by an executrix, upon a promissory note made by one of the defendants and indorsed to the intestate by the others, the maker is an incompetent witness as between the defendants and the plaintiff, to prove that the note, at the time it was made, was infected with usury; or that the time of payment had been extended by an agreement between the testator, in his lifetime, and the witness, without the consent of the indorsers.

And it makes no difference that the action was commenced by the testator in his lifetime, and at time of the trial was continued in the name of his executrix.

Where an action is commenced upon a promissory note, against the maker and indorsers, by the service, upon all, of a summons in which all are named, the maker is clearly a "party" to the action. The fact that he does not appear, nor put in an answer, but suffers default, does not operate to sever the action, or to discontinue it as to him. And being a party, he is an incom-

Genet *v.* Lawyer.

petent witness against the plaintiff suing as executrix, in respect to trans-
actions between him and the testator.

Nor will a release, executed by the indorsers, to the maker, of his liability to
them upon the note, affect the question of his competency as a witness
against the plaintiff. The defendants cannot, by any act of their own,
change the statute, or take away the rights of the plaintiff under it.

The act of 1835, (*Laws of* 1835, *ch.* 211,) which provides that when default is
obtained against part of the defendants, the plaintiff may proceed to the trial
or hearing against the other parties, in the same manner as if the suit had
been commenced against the other parties only, and the action shall be
thereby severed, has been suspended and abrogated by the Code. It is
inconsistent with the provisions of the Code, and is therefore repealed by
section 468.

A record-book of protests, kept by a notary, is the best evidence of the en-
tries therein; and if such entries are competent for any purpose, the book
should be produced, or shown to be lost, before parol evidence of the entries
can be given.

THIS action was commenced in April 1865, by Wash-
ington Genet, the plaintiff's testator, against Walter
Schram, Frederick Lawyer and Nicholas Lawyer, upon a
note made by said Walter Schram, dated the 14th day of
March, 1864, for $100 and interest, payable four months
after date, at the Watertown Bank and Loan Company,
to the order of Frederick Lawyer, and indorsed by said
Frederick Lawyer and Nicholas Lawyer. The summons
and complaint, which was verified, was served on the said
Walter Schram, Frederick Lawyer and Nicholas Lawyer.
Walter Schram, the maker, served no answer and made
no defense. Frederick Lawyer and Nicholas Lawyer
served a verified answer containing six defenses. 1st. De-
nying the legal inception of the note, and its demand and
protest. 2d. Usury. 3d. That the note was made for
the accommodation of Schram, and that after it became
due, Genet, the holder, extended the time of payment for
a valuable consideration, thereby releasing the indorsers,
who did not consent to such extension. 4th. That the
time of payment was a second time extended. 5th. That
the note was an accommodation note for Schram, and trans-
ferred to the plaintiff as collateral to a precedent debt, due

by Schram to the plaintiff, for usury money, which was illegal. 6th. That the plaintiff was indebted to Schram, the maker, in an amount more than the note.

The answer was accompanied by an affidavit under the statute, that no notice of protest had been received.

In 1867, Washington Genet died, and the action was continued in the name of Mary Genet, executrix &c., and was brought to trial at the October circuit, 1867, in Jefferson county, before Justice MULLIN and a jury.

The notary proved the fact of protest, without reference to any book-record, speaking from entries made by him on the note. The defendants proved that the notary kept a record-book of protests, and that it was last seen in the custody of one W. Sherman. They then offered to prove by a person who had once seen it, that it showed the protest to have been on a different day from that testified to by the notary. The court ruled that the defendants must first call W. Sherman, and prove the loss of the book, before they could prove its contents by parol. The exception to this ruling was one of the grounds of this appeal.

The defendants then called as a witness the defendant Schram, and offered to prove, by his narration of personal transactions had between him and the deceased, that the note was void for usury; also to prove the extension of the time of payment. This was objected to under section 399 of the Code, and the court excluded it. The exception to this ruling was another ground of this appeal.

A release from the Lawyers to said Schram, of all liability to them by reason of said note or suit, was given in evidence, and the witness was again offered, to prove the same transaction. On objection by the plaintiff, the court held the witness incompetent to speak, and ruled the evidence out. Exceptions were duly taken to these rulings. The jury, under direction of the court, found a verdict for the plaintiff, for $126.27. A motion for a new

trial was made, upon the minutes, and denied, and from the order the defendants appealed.

*Levi H. Brown,* for the appellants.

I. At the time of the commencement of this action, and when the answer was served, the witness Schram was competent to testify to the facts proposed to be proved by him. The rights of the parties were fixed at that time, and the subsequent death of the plaintiff did not deprive the defendants of those rights. The continuation of the suit in the name of the executrix is not such a prosecution of the action as is contemplated by the Code. (*Sec.* 399 *as amended in* 1867.) The Code intends to include only such actions as are originally commenced by executors or others in a representative capacity.

II. Walter Schram was not a party to the action, within section 399 of the Code, and was therefore a competent witness for the defendants. The summons and complaint was served on Schram,. but he had not answered or put in any defense. The Lawyers answered, and thus the action was severed, and it became as if originally commenced against the Lawyers alone. Section 120 of the Code, under authority of which Schram and the Lawyers were included in this one action, is but a mere re-enactment of the law of 1832 in relation to suits on notes and bills. This section is now the same as reported by the commissioners in their first report as section 100. Their note to the section, in the report, " is conformable to the present statute authorizing suits against the different parties to bills of exchange and promissory notes, laws of 1812, chapter 276." (*Commissioners' First Report,* 127. *Parker* v. *Jackson,* 16 *Barb.* 33 *to* 43.) Section 2, of chapter 211 of the laws of 1835, which is amendatory of the laws of 1832 above mentioned, provides, among other things, that " if a default shall have been obtained against part of the defendants, the plaintiff may proceed to the trial or hearing against the

Genet *v.* Lawyer.

other parties, in the same manner as if the suit had been commenced against the other parties only, and the action shall thereby be severed." (*Sess. Laws of* 1835, *p.* 249.) A default had been obtained, long before this trial, against Schram, and thereby, by his failure to answer, the suit became severed, and was as if it had been originally commenced against them only. Section 8 of chapter 276 of the laws of 1832, provides: "In every suit brought pursuant to the provisions of this act, any one or more defendants shall be entitled to the testimony of any co-defendant as a witness in all those cases where the defendant or defendants calling the witness would have been entitled to his testimony, had the suit been brought in the form heretofore used, and in no other case." (*Laws of* 1832, *p.* 490. *Miller* v. *McCagg,* 4 *Hill,* 35, 36.) The witness having been released, under that section of the act of 1832, became a competent witness for the Lawyers, his co-defendants. This statute of 1832, as amended in 1835, is not repealed, and remains in full force, unless repealed by implication as being inconsistent with the Code. Repeals by implication are not favored; and when two laws can be so construed as to allow both to stand, it is the duty of the court so to construe them. The Code intended to enlarge the instruments of evidence, instead of abridging, in accordance with the spirit of the times, to give greater facilities for arriving at the truth than the common law allowed. It accordingly allows parties to actions to be examined, and thus infringes on the rule of the common law. The act of 1832 does not intend to enlarge the rule as to evidence, but seeks to keep it precisely as it found it. The courts have held that this section should be liberally construed, instead of literally, when they hold that this section did not allow husband and wife to be witnesses for each other, although parties to the action, and literally within the meaning of the words, thus giving the intent of the act rather than the literal meaning.

Genet *v.* Lawyer.

An act, the intention of which is to enlarge a right, will not be so construed as really to abridge, unless the language is so clear as to admit of but one construction; if a construction can be given which is in furtherance of the intention and spirit of the act, that ought to be given. It would be contrary to the spirit and intent of the Code to construe it as repealing the law of 1832, as by so doing the instruments of evidence are abridged instead of being enlarged. If the word "party," as used in this section of the Code, is construed to mean the same as it does at common law and in strict legal parlance it means, then the Code will be so construed as to allow the former act to stand, and the intent of the Code will be forwarded. That the intent of the act is that *party* means one who is interested in the suit, is shown by the words following, which should be read as explanatory of what precedes— the words are *no party*—any person who has a legal or equitable interest—any assignor of anything in controversy. The intent of the exception was to prevent a witness testifying in his own behalf in reference to transactions personally had with a deceased person, whose representatives are the parties in interest in the suit, who are thus unable to contradict the witness testifying. The exception is wise, to prevent perjury; but when the witness is not testifying in his own behalf and is really not a party in interest, the reason for the rule is gone. The case of *Fox, administrator &c.* v. *Clark and others*, decided at general term in this district, in 1862,(*a*) cited on the

(*a*) The case referred to is the following:

ALMIRA FOX, Administratrix, &c., *vs.* JAMES M. CLARK, DAVID D. OTIS, ISAAC MUNSON, and JAMES F. STARBUCK.

This action was brought by the plaintiff, as administratix of William Fox, deceased, against the defendants as maker and indorsers of a promissory note.

The note and indorsements were as follows:

"Three months after date, for value received, I promise to pay at the Jeffer-

trial of their action, and which was held by the justice trying this case to be controlling, was substantially different from this.    That action was brought on a note, made by Clark and indorsed by three other defendants; all the defendants joined in an answer of usury.    Clark was offered as a witness to prove the usury with the plaintiff's intestate.    He was held incompetent for that purpose, and

son County Bank, to the order of Isaac Munson and D. D. Otis, fifteen hundred dollars and interest.    Watertown, Feb'y 19th, 1859.

Signed,                              J. M. CLARK."

Endorsed: "D. D. Otis, Isaac Munson, James F. Starbuck.    Pay to the order of the Watertown Bank and Loan Company.        WILLIAM FOX,

T. A. SMITH."

The complaint alleged the making and indorsement of the note, presentment and non-payment at maturity, protest and notice to indorsers; and that Fox, the plaintiff's intestate, had been compelled, as one of the indorsers, to pay and take up the said note, and the same was duly transferred to, and was held and owned by the plaintiff as such administratrix, and judgment was demanded for the amount of the note, with interest, notary's fees, and costs.

The defense was usury.

On the trial, at the circuit, it appeared in evidence, that in 1859, William Fox and Timothy A. Smith were copartners in what *they* called the business of "negotiating paper," but what others called lending money, and negotiating loans at usurious rates.    In February, 1859, the defendant Clark agreed with them for a loan of $1500, three months, for which he paid them interest, and $30 usury, making his agreement to this effect with Smith, he acting for Smith & Fox.    The note was made by Clark, and he procured the other defendants to indorse for his accommodation.    The note was transferred by Clark to Fox & Smith, and they, by their joint indorsement, transferred it to the Watertown Bank and Loan Company.    Fox died May 10, 1859, and the plaintiff was duly appointed his administratrix.    Clark was offered as a witness to prove the agreement on which the money was loaned.    The evidence was objected to, on the ground that a transaction had with the deceased could not be proved, against his personal representative, the plaintiff, by a party to the action.    The offer was not to give the proof in behalf of the indorsers, only, but for all the defendants.    The court held the witness incompetent, and excluded the evidence; and the defendants excepted.    The defendants also offered to prove by the witness, the negotiation of the usurious loan with Smith, of the firm of Smith & Fox, in the absence of Fox, and the payment of the $30 usury to Smith.    This evidence was also excluded, and exception taken.

The court directed a verdict for the plaintiff for $1477.50, to which direction

rightly. He was a party to the suit; there had been no severance; he joined with the others in the defense; there was no release to him, so that he was not a competent witness at common law, or under the act of 1832. The Code, as amended in 1860, as it was at the time of that trial, was much broader than the amendment of 1867. In the first, *no party* shall be examined against representa-

the defendants excepted. The jury found accordingly; and the defendants made a case and moved for a new trial.

*Lansing & Sherman*, for the plaintiff.

*Starbuck & Sawyer*, for the defendants.

*By the Court*, MULLIN, P. J. (After discussing other questions.) This brings us, then, to the question whether Clark was a competent witness for the indorsers.

Section 120 of the Code provides that persons severally liable upon the same obligation, or instrument, including the parties to bills of exchange, or promissory notes, may all, or any of them, be included in the same action, at the option of the plaintiff.

The maker and indorsers of the note, on which this action was brought, were joined, in conformity to the provisions of this section. They are all of them parties to the suit. They may sever in their defenses, or the plaintiff may proceed to trial against them separately, by leave of the court. (*Code,* § 258.) Without leave of the court the action cannot be severed; and hence the defendants must remain united until they are separated by judgment, after trial, or before trial, on cause shown.

Section 399 of the Code, as amended in 1861, provides that a party to an action, &c., may be examined as a witness on his own behalf, or in behalf of any other party, in the same manner, and subject to the same rules of examination, as any other witness; except that a party shall not be examined against parties who are representatives of a deceased person, in respect to any transaction had personally between the deceased person and the witness, &c.

In construing this section, it must be borne in mind, 1st. That the plaintiff is a personal representative; 2d. That Clark is a party to the action; 3d. That he is called in behalf of other parties to the same suit; and 4th. Called to testify to transactions had personally between him and the deceased.

Were it not for the exception, it is quite obvious that Clark would be a competent witness. But the exception prohibits him from being a witness, not only when he is called in his own behalf, but when called in behalf of another party. The case is expressly within the letter of the statute, and we

Genet *v.* Lawyer.

tives. In the other, *no party, no person having an interest,* shall be examined against a party prosecuting, &c., as executor, when any judgment or determination can affect the interest of the witness.

III. But conceding the witness Schram to be a party to this action. Upon the execution to him of the release of all liability on his note to them, and all liability by reason

cannot take it out by construction. The very case is provided for, and there is no room for construction.

The defendants' counsel falls back on chapter 276 of the Laws of 1832, entitled "An act regulating suits on bills of exchange and promissory notes, and the several acts amendatory thereof;" and insists that, as by the 8th section of that act, any defendant was authorized to use any other defendant as a witness in the same cases he would have been entitled to use him, had separate suits been brought against the several parties to such bill, or note, that section 399 of the Code does not apply to the case. And that section 8 is still in force.

Section 120 of the Code adopts the provisions of the act of 1862, so far as the joinder of defendants is concerned, and extends them to cases not contemplated by the act of 1832. The provisions of the Code were obviously intended to provide for the cases covered by the act of 1832, and prescribe a rule which should govern all cases to which the provisions of section 120 can apply. If I am right in this, then the act of 1832, so far as it regulates the joinder of parties, is repealed.

Section 399 of the Code applies to all cases in which parties to actions may be witnesses. It prescribes new rules, which were obviously intended to apply to all cases in which parties may be witnesses, and thereby supersedes the 8th section of the act of 1832.

The Supreme Court of the United States, in *Davis* v. *Fairbanks,* (3 *How. U. S. Rep.* 636,) lays down the rules as to the construction of statutes thus : " If a subsequent statute be not repugnant in all its provisions to a prior one, yet if the latter statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the prior one." Under this rule, it seems to me, the act of 1832 is repealed. It is insisted, however, that it could not have been the intention of the legislature to repeal the 8th section of that act, because the effect of it is to restrict the rules of evidence, whereas, the object of the legislature, from 1848, has been to enlarge them. The difficulty is rather apparent than real. By severing, the defendant is restored to all the rights given by the act of 1832, or by the Code. It is true that severance rests in the discretion of the court, and is not a matter of absolute right. Hence the right to the evidence of a co-defendant rests in discretion, and is not absolute, as it was under the act of 1832. But no serious mischief can result

of this suit, he then became a competent witness for the defendant Lawyer. He had not put in any defense, and the plaintiff had a default against him, so that, at any time, let the result of this action against the other defendants, Lawyers, be what it might, she could have entered judgment against him; so that, as far as the rights of the plaintiff were concerned, the result of this trial could not affect

from this. A severance would always be granted when a co-defendant was needed as a witness; and if refused, it would be open to review.

As no severance was had in this case, I am of opinion that the witness was properly rejected.

The third answer sets up, by way of defense, two distinct usurious agreements; one with the intestate, Fox, the other with Smith. The first was at the beginning of the dealings between Clark and Fox & Smith. The last was in a subsequent stage of the business. Proof of either agreement defeated the note. The defendants' counsel, in his 4th point, insists that Clark was a competent witness to prove the usurious agreement between him and Smith, and that he was offered for that purpose, on the trial, and rejected. If he is right in this, the judgment should be reversed.

The offer is in these words: " The defendants next offered to prove, by the witness, that in February, 1859, after the interview with Fox, Smith came to Clark's store and negotiated with him in respect to the loan represented by the note in suit; agreed, in behalf of himself as well as Fox, for $30 usury, to be taken on this note, for three months; and in pursuance of that agreement met Clark, at the bank and procured him the money, and received the usury; and that this was done in presence of Fox."

That part of the offer relating to an interview with Fox, and that he was present and assenting, at the negotiation between Smith and Clark, or at the bank, must be excluded, under section 399 of the Code. If a party is called to testify to an interview with a deceased person, and seeks to bind his representatives, in any degree, by the silence of the deceased, such evidence is within the 399th section, as clearly as is evidence of his declarations.

If the remainder of the offer establishes a defense, it was clearly admissible, and should have been received; unless, by combining the offer of competent matter of defense with that which is incompetent, the whole must be rejected. The offer is, in substance, to show that Smith, for himself and Fox, made a usurious agreement respecting the loan represented by the note in suit. But inasmuch as the offer embraces evidence that was incompetent, the judge was right in rejecting the whole evidence embraced in it.

While usury cannot now be treated as an unconscionable defense, it may, without impropriety, be considered a harsh one; and the party who attempts to avail himself of it should be strictly right, and if not, the court should exclude his defense.

Genet *v.* Lawyer.

him. Upon the execution of the release to him by the Lawyers, the other defendants, no judgment in the action could have affected him, as to the right that the Lawyers had to resort to him; so that he was clearly not included within the exception in the Code, as it then stood : "That no party to the action shall be examined, when such examination, or judgment, or determination in such action, can in any manner affect the interest of such witness." He stood indifferent as a witness between the parties, having no interest one way or the other, and was competent in the spirit and intent of the act. He was a party to the action, the judgment in which could in no manner affect his interest, and was competent, in the strict letter of the act.

*Starbuck & Sawyer*, for the respondent.

I. The ruling excluding parol proof of the contents of the notary's book was clearly correct. The defendants' own witness proved the book to be in the custody of Wooster Sherman. There was no pretense of having applied to him for it, or that he could not have produced it if required

Fox and Smith were held, on the trial, to be joint indorsers. After the death of Fox, Smith alone was sued, and judgment had against him, alone; and it is claimed that the estate of Fox, the co-indorser, was thereby discharged. This, however, is a mistake. The rule at common law, was, that if one of two, or more, joint debtors died, his executor, or administrator, was at law discharged, and the survivor alone could be sued. (1 *Chitty's Pl.* 37.) The recovery against Smith alone did not, under our statutes relating to the estates of deceased persons, release the estate of Fox from liability over to, Smith, or the holder of the note.

It is not necessary to decide, in this case, whether an administrator can use the means of the estate in buying paper, as the question is not in it. The intestate was, at his death, liable to the holder of the paper. If the co-indorser paid the whole, the estate was liable to contribute. If nothing was collected of Smith, the estate was liable for the whole amount, and the plaintiff had the right to take it up, and prosecute the parties liable over to her, upon it.

The judgment should be affirmed.

[Decided at the GENERAL TERM, at Syracuse, in April, 1862. Present *Mullin*, P. J., and *Morgan* and *Bacon*, Justices.]

to do so.   Upon no principle, in such a case, could resort be had to parol proof of its contents.

II.  The defendant Walter Schram was "a party to the action."   He was served with the summons and complaint. The other defendants, in their answer, characterize him as "the defendant Walter Schram."   His character as a "party to the action" is not determined by the question of whether or not he appears or defends.   The test is, was he served?   If he was, the fact makes him a party. Civil actions "shall be commenced by the service of a summons."   (*Code*, § 128.)   A person served with process is a party to the action, and this irrespective of the question of appearance.   (*Robinson* v. *Frost*, 14 *Barb.* 536.   *See also* 1 *Bosw.* 636.)

III.  The defendant Schram, being a party to the action, was incompetent, under section 399 of the Code, to testify, either in his own behalf or in behalf of any other party, to any transaction had personally between him and the deceased. 1.  The language of section 399 is too explicit to admit of doubt as to its meaning.   By its express letter, any person who is a party is prohibited from testifying, "in respect to any transaction had personally between the deceased person and the witness."   2.  The language of the offer is to prove the alleged usury, "by personal communication and transaction had by the witness with the said Genet, deceased."   This is the precise thing which the statute prohibits.   3.  Section 8, of chapter 276, Session Laws of 1832, (page 489,) is repealed by section 399 of the Code.   This was distinctly held at general term, in the fifth district, in *Fox* v. *Clark*; (*ante p.* 216, *note.*)   In that case the plaintiff was administratrix of her husband's estate.   The action was on a note for $1500, made by Clark and indorsed by the other defendants.   There, as here, the defense was usury.   Clark was there called as a witness, just as Schram is here.   The proof was that the intestate and one Smith were in company, in the business of lending money and

Genet *v.* Lawyer.

negotiating notes at excessive rates. On the trial before Judge MULLIN, at the Jefferson circuit, in June, 1861, the indorsers called Clark as a witness, and offered to prove by him: (1.) That he agreed with Fox, deceased, to pay him and Smith $30 shave on the note for three months. Excluded with exception. (2.) That he had the like negotiation and agreement with Smith, who agreed for himself and Fox, and that Smith went to a bank with him and procured the money, and received the $30 shave, but that this last transaction was had in the presence of Fox. Excluded with exception. (3.) These offers were specially made, not in behalf of Clark, but of the indorsers. Excluded with exception. A verdict for the plaintiff was ordered, and the indorsers appealed. The case was very fully argued, and was held over till the next term, and carefully examined. An elaborate opinion was written by Judge MULLIN, concurred in by the full bench, affirming this judgment. The points distinctly ruled, were: (1.) That, as between the plaintiff and the indorsers, Clark must be regarded as a "party." (2.) That by section 399 of the Code, section 8 of chapter 276 of the Session Laws of 1832, (page 489,) was repealed. (3.) That, being a party, Clark was prohibited by section 399, from testifying in behalf the indorsers, to any of the matters offered to be proved.

IV. The case of *Fox* v. *Clark et al.*, had in it the additional elements that the plaintiff lent herself to the alleged usurers, as plaintiff, to enable them to exclude the evidence of usury, and that Clark, being hopelessly insolvent, was made a defendant for no other purpose than to exclude his testimony; and still that judgment was affirmed.

*By the Court*, JOHNSON, J. The testimony offered by the defendants, of the witness Schram, was properly rejected. He was the maker of the note on which the action was brought, and a party defendant in the action.

The note was given to the plaintiff's testator, and the offer was to prove, by this witness, that the note was, at the time the same was made, infected with usury; and also that the time of payment had been extended by an agreement between the testator, in his lifetime, and the witness. This was clearly inadmissible, as between the defendants and the plaintiff, who was prosecuting and carrying on the action in her representative capacity. It makes no difference that the action was commenced by the testator in his lifetime, and at the time of the trial was continued in the name of the present plaintiff, only. The testimony was offered against the plaintiff as executrix, and the statute is explicit, that "no party to an action or proceeding, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person' *at the time of such examination* deceased," &c., "against the executor," &c. .The witness was clearly a party to the action. The action was commenced against him and the other two defendants by the service of a summons in which all were named, and which was served upon all. The fact that the witness did not appear nor put in an answer, but suffered default, did not operate to sever the action, or to discontinue it as to him. He was still a party. Nor did the release executed to the witness by the other defendants, affect the question.

The defendants could not, by any act of their own, change the statute, or take away the rights of the plaintiff under it. The defendants were properly joined in the action, as parties defendants, under section 120 of the Code, and there had been no several judgment against the party offered as a witness; nor was it a case in which the action could have been divided into several actions, under section 172 of the Code. Under section 274 of the Code, the court is authorized, in its discretion, to render judgment against one or more of several defendants, leaving the

Genet *v*. Lawyer.

action to proceed against the other defendants, whenever a several judgment may be proper. But it is all in the same action, and the parties to such action remain unchanged, even in that case.

The defendants' counsel seem to rely upon section 2 of chapter 211 of the act of 1835, amending the act of 1832, which provided that where default was obtained against part of the defendants, the plaintiffs might proceed against the other parties, in the same manner as if the suit had been commenced against such other parties, and the action should be thereby severed. But this statute has clearly been superseded and abrogated by the Code. It is inconsistent with the provisions of the Code, and therefore repealed by section 468.

The Code has provided in what cases, and in what manner, actions may be severed. The witness having been served with the process, was a party to the action, whether he appeared and answered, or not; and being a party, was incompetent.

The other question is, whether the defendants should have been allowed to prove the entries made by the notary in his book, without producing the book. The notary had testified, from a memorandum made by him on the note, that it was protested July 16, 1864, which was in due time. The defendants offered to prove by a witness who had some time previously seen the book, that the entry therein by the same notary was a protest on the 15th of July, instead of the 16th. The book was shown to have been in the possession of a third person when thus seen by the witness. It was not shown to have been lost, or kept out of the way. The book was the best evidence of the entries therein; and if the entries were competent for any purpose, the book should have been produced, or shown to have been lost, before parol evidence of the entries was allowable.

The motion for a new trial was properly denied at special term, and the order must be affirmed.

MULLIN, P. J., having tried the cause, and made the order appealed from, did not sit in the case.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871. *Johnson* and *Talcott,* Justices.]