DAVID S. BENNETT AND HARRIET A. BENNETT, PLAINTIFFS, *v.* LAVINIA H. AUSTIN, IMPLEADED WITH TRUMAN G. AVERY, DEFENDANT.

*Code, § 399 — party cannot testify in behalf of co-plaintiff — New trial — when not granted for admission of improper evidence.*

Section 399 of the Code prohibits the examination of a party to the action in the cases therein specified, not only when such party is called to testify in his own behalf, but also when called in behalf of a co-plaintiff or co-defendant.

*Genet* v. *Lawyer* (61 Barb., 211) followed.

A new trial will not be granted for the improper admission of evidence, when it is of doubtful or slight materiality, or when the preponderance of the legal evidence is so strongly in favor of the verdict, as that the appellate court can, with reason, say that the improper evidence has not influenced the result.

MOTION by defendant for a new trial, under section 268 of the Code.

This was an action to have a deed, given by plaintiffs and Truman G. Avery and wife to Stephen G. Austin, dated January 28, 1870, on property, in Buffalo, declared a mortgage, and for redemption. It was tried at the Erie Special Term, in June, 1874, and the relief asked for granted. The defendant moves for a new trial under section 268 of the Code.

On and prior to January 28th, 1870, David S. Bennett and Truman G. Avery were partners, as commission merchants, at Buffalo, under the name of Bennett & Avery. They then occu-

pied the Bennett and Union elevators, so called, and certain other real estate, called the Triangle, and thirty-four acres of land situate on Best street. Stephen G. Austin then owned one-third of the Bennett elevator property, by deed from Mr. and Mrs. Bennett and Mr. Avery, dated February 25, 1869. Of the balance of said property, Mrs. Bennett owned, in her own right, two-thirds of the Triangle, a third of one of the five lots covered by the Bennett elevator, and the balance of the property was owned by Bennett & Avery in different proportions.

On the 28th of January, 1870, Mr. and Mrs. Bennett and Mr. Avery and wife gave to Austin a quit-claim deed of all their interest in the above described property, for the consideration, as therein expressed, of $50,000. Bennett & Avery were at this time much in need of money, and had applied to Austin for a loan; and it was a question of fact whether or not the deed was intended as an absolute conveyance, or as a security for a loan. The Special Term found it a security. Austin was a man of large means and the father-in-law of Avery. He immediately took possession and received large amounts of rents in 1870, 1871 and 1872, and died June 19, 1872, devising this real estate to the defendant Lavinia H. Austin, who has since been in possession. The whole property was worth from $250,000 to $400,000, and was incumbered to about $150,000 prior to the deed of January, 1870. The interest held by Avery in the property had been bought by him of Mr. and Mrs. Bennett, but the purchase-price was not paid, and is the subject of other litigation. On the 21st of October, 1869, Mr. and Mrs. Bennett and Avery executed to Robert Stewart and others, a mortgage of $50,000 on their interest in the Bennett and Union elevators, with an assignment of the rents; and the Special Term found that Austin agreed to advance money to pay this mortgage. He knew of the assignment of the rents, and after he took possession disregarded it and received the rents himself to a large amount; and afterward, on the foreclosure of the Stewart mortgage, bid in the property and took a deed dated December 10, 1870. Mrs. Bennett joined in the deed of January, 1870, as surety for Bennett and Avery.

The consideration, as stated in the deed from Mr. and Mrs. Bennett and Avery, to Austin, February 25, 1869, was $80,933.33.

Of this, it was claimed by plaintiffs, that about $20,000 had never been paid by Austin, and was still due from Austin or his estate; and the court so found.

Judgment was ordered, declaring the deed a mortgage; that plaintiffs, jointly or separately, might redeem; that they were entitled to an accounting for the rents and profits of the property conveyed, including the part conveyed by Avery; that Austin did not perfect his title by the purchase under the Stewart foreclosure; that, on the accounting, the plaintiffs should be credited with the $20,000 item, balance of purchase-money of deed of February, 1869.

On the trial, Mr. Bennett was offered as a witness on behalf of Mrs. Bennett, to testify to certain transactions between him and Austin, and the defendant objected that such evidence was not admissible under section 399 of the Code. The objection was overruled. Defendant excepted.

*Wm. H. Greene*, for the plaintiffs.

*Sherman S. Rogers*, for the defendant.

MERWIN, J. :

The first question to be determined is, whether or not Mr. Bennett could testify on behalf of his co-plaintiff, Mrs. Bennett, as against the defendant, Mrs. Austin, who is the devisee of Stephen G. Austin, deceased, as to any personal transaction or communication between such witness and Mr. Austin. Section 399 of the Code provides that no party to any action or proceeding shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination deceased, against the devisee of such deceased person. Mr. Bennett is a party plaintiff; Mrs. Austin, the devisee of the deceased person, Mr. Austin, is the party defendant against whom the evidence is offered; and the transaction was a personal one between the witness and the deceased. So that, in terms, the inhibition of the statute applies, unless there is some other provision that relieves it. The section does not say, no party to any action or proceeding when called in his own behalf, but it says, absolutely, no party. And the question is, whether we can con-

strue the section as if it read, no party, when called in his own behalf, shall testify. By section 397, which stands now as it was passed in 1852, it is provided that a party may be examined on behalf of his co-plaintiff or co-defendant, as to any matter in which he is not jointly interested or liable with such co-party, and as to which a separate judgment can be rendered. In 1869, section 398 was so amended as to provide that no person offered as a witness should be excluded by reason of his interest in the event of the action, or because *he was a party thereto*, except as provided in section 399; and the latter section was at the same time amended as it now stands. It will be seen that the amendment of section 398, in 1869, made section 397 entirely inoperative. (DWIGHT, J., in *Card* v. *Card*, 39 N. Y., 317.) All parties were allowed to testify, except as limited in section 399, and that is the only provision, now in force, applicable to cases where one party to the transaction is dead. This department, in *Genet* v. *Lawyer* (61 Barb., 211), passed upon this precise question. That was, where the action was by an executor against the maker and indorsers of a note. The maker was served with process, but made default. The indorsers offered him as a witness on their behalf, to prove a transaction between him and the testator of the plaintiff. This was objected to and rejected, and the court affirmed the ruling. Section 399 of the Code then stood substantially as now, as far as this question is concerned. It follows that the Special Term erred in admitting the testimony.

But it is suggested that though improper evidence was admitted, a new trial will not be granted on that ground, provided there is enough competent evidence in the case to justify the relief given. In *Forrest* v. *Forrest* (25 N. Y., 510), it is said by Judge WRIGHT, that courts of law, on an application for a new trial, judge for themselves of the materiality of evidence found to have been improperly admitted or rejected, and when satisfied that no injustice has been done, and that the verdict would have been the same with or without such evidence, they have refused a new trial. This is approved by DALY, J., in *Lamb* v. *Camden, etc., R. R.* (2 Daly, 475), and in *Clark* v. *Brooks* (2 Abb. Pr. [N. S.], 390). In the Court of Common Pleas, in England, the rule is, not to grant a new trial for error in admitting evidence, if, without such evidence, there is enough to warrant the finding of the jury. (*Horford* v. *Wilson*, 1 Taunt.,

12; *Doe* v. *Tyler*, 6 Bing., 561; Grah. & Water. on New Trials, 246.) The case in Bingham was ejectment. In this State the rule has not been applied so strongly. Where the evidence admitted is of doubtful or slight materiality, or when the preponderance of the legal evidence is so strongly in favor of the verdict that the appellate court can with reason say that the improper evidence has not influenced the result, the error should be disregarded.

In the present case the Special Term decided that Mr. Bennett, as well as Mrs. Bennett, had the right to redeem. The evidence of Mr. Bennett was not, in terms, offered or received in his own behalf. Mrs. Bennett gave some evidence in behalf of her husband, but of no material bearing on this question, so that, theoretically at least, the court at Special Term, without the evidence of Mr. Bennett, found the existence of the necessary facts to authorize redemption. That is, with the evidence of Mr. Bennett, it decreed redemption in behalf of Mrs. Bennett; and without such evidence it decreed it in favor of Mr. Bennett. The logical conclusion would be, that the result would have been the same, had the evidence of Mr. Bennett been excluded. That evidence was very material and pertinent; was the most direct given on the part of plaintiffs; and the question with me is, whether it did not necessarily have an effect, in the whole case, in favor of Mr. Bennett, as well as of his wife. Had the evidence been excluded, and the finding the same as to the character of the deed, I think we should not have disturbed it. The competent evidence would, it seems to me, clearly sustain such a finding. The evidence of Stewart, as to the interviews in February and May after the deed; the stipulation in the Stewart foreclosure suit; the $40,000 receipt of November 2d, 1870; the evidence of Sherwood and Seth Clark; the excess of value over incumbrances; the probabilities of the case; would justify the holding the deed a mortgage. There was, however, direct evidence to the contrary, and how much weight the admitted evidence of Bennett had, in overbalancing the direct evidence on the other side, I cannot say. I do not think it would be a safe rule for us to adopt, to disregard an error in admitting a party to give direct and very material evidence in opposition to evidence as direct and material (*Williams* v. *Fitch*, 18 N. Y., 546), unless it can be substantially

demonstrated that the error did not in fact affect the result. Such demonstration I do not think exists in this case.

There is another part of the case which it may become important to consider. The court below, in authorizing a redemption, directed that there should be allowed to plaintiffs, in the accounting, the sum of about $23,000, balance due from Austin on the purchase of a third of the Bennett elevator in February, 1869. It will be remembered that the deed in suit was given January 28th, 1870, when Bennett and Avery were in great need of money, and they, as well as Mrs. Bennett, were very anxious to raise it. Between February 18th, and May 7th, 1869, Bennett had paid on the purchase-price of the third, divers sums, amounting to about what the price was, as claimed by the defendants. Nothing was paid after May seventh. In the summer and fall following, Bennett and Avery were in want of money; they mortgaged to Stewart, in October, 1869, for $50,000, and then in January came the hard pressure; and during the negotiations at that time, in which Mr. and Mrs. Bennett and Avery and Austin took part, not a word was said by any one about any balance due from Austin on the former purchase. Austin was a man of large means, and could have paid the debt any time. Silence at that time, under the then existing circumstances, can be accounted for only on two grounds: First, that the purchase in February, 1869, was a security for moneys advanced — in fact, a mortgage; or, second, that the price had been fully paid, and there was no debt. It is not claimed by either party that that deed was a mortgage, and the other conclusion must follow. It seems to me absolutely incredible, that a debt of that amount should then exist. It is no answer to say that it was understood to belong to Mrs. Bennett, for she was then as anxious as any one to raise money, and was ready to and did place in Austin's hands all her property, in order to meet the emergency. Besides, if the evidence of Mr. Bennett was incompetent, there is no evidence to sustain the debt. In allowing this item, I think the court below clearly erred.

A new trial should be granted.

Present — SMITH, P. J., GILBERT and MERWIN, JJ.

New trial granted, costs to abide event.