HERBERT H. SANFORD, by PETER A. GORRIE, his guardian, &c., Respondent, *v.* WILLIAM A. SANFORD, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1871.)

It seems an action will not lie at the suit of a child, born after the making of the father's will, in which it is not mentioned, and unprovided for by settlement, to recover from children born before the will any portion of advancements made to the latter; but that the action in such case is, under the statute (2 R. S., 97, § 76; 1 id., 754, § 23), to compel distribution, and to determine what, if any, portion of the testator's estate devised to the children who have received advancements shall belong to them.

It seems the rights of such child under the statute (2 R. S., 65, § 49; id., 456, § 62, &c.) attach to advancements made prior to the will.

When a parent conveys land to his child, without asking or receiving any consideration, the presumption is that the gift is an advancement, though the deed recites a money consideration and contains an acknowledgment of payment. (Per BALCOM, J.)

A considerable sum of money given to a son to enable him to start in business is *prima facie* an advancement; otherwise with inconsiderable sums given occasionally in the way of spending money and the like. *Id.*

A party to an action is not excluded from testifying, as against an heir-at-law, &c., under § 399 of the Code, in regard to a conversation between

Sanford *v.* Sanford.

a deceased testator and a third person, as tending to show a personal transaction or communication between the witness and deceased.

But testimony as to statements made by the deceased to a third person, in regard to the character of grants of land or dispositions of moneys previously made to his children, is inadmissible against them to show the same to have been advancements, as hearsay.

In an action between next of kin, the plaintiff called his brother one of the defendants, who testified to having written letters (which were produced) to their deceased father, in which the fact was stated that their father had given him (the witness) a certain sum of money.—*Held*, that it was proper for the witness to explain, on cross-examination, the character of the alleged gift, and to show that it was not in the nature of an advancement, although objection was made that the testimony related to a transaction or communication between witness and the deceased, which had not been called for on the direct examination.

A promissory note taken in the name of husband and wife, survives to the wife on the decease of the husband; and, in an action for distribution of the personal property of the husband, she may show that it was appraised as part of such estate by her procurement, but under misapprehension of her rights.

And it may be shown in such action that a legacy to the widow, in lieu of dower and of all claims against the testator's estate, was inserted in the will upon an understanding between the testator and his wife that it should be in lieu of such note, and of all claims against his estate.

And this fact may be shown by the testimony of the attorney who received instructions from the testator for the preparation of the will and prepared it.

THIS was an appeal by the defendants, William A. Sanford and Joseph H. Sanford, from a judgment against them in favor of the plaintiff, entered in St. Lawrence county, on the 11th day of February, 1871. The facts appear in the opinion.

*Edward C. James,* for the plaintiff.

*W. H. Sawyer,* for the defendant, William A. Sanford.

*Henry L. Knowles,* for the defendant, J. H. Sanford.

Present — MILLER, P. J., PARKER and BALCOM, JJ.

By the Court — BALCOM, J. Joseph H. Sanford, Sr.. died on the 1st day of August, 1866, leaving a last will and testa-

ment, dated the 19th day of July, 1865; also leaving the plaintiff, an infant son, who was born after he made his will; also leaving the defendant, Maria D. Sanford, his widow; and also leaving the defendants, William A. and Joseph H. Sanford, sons surviving him.

The deceased left an estate consisting of both personal and real property. He left the plaintiff unprovided for by any settlement, and neither provided for, nor in any way mentioned in his will. The plaintiff therefore succeeded to the same portion of his father's real and personal estate as would have descended or been distributed to him if his father had died intestate; and he is entitled to recover the same portion from the devisees and legatees, named in his father's will, in proportion to, and out of, the parts devised and bequeathed to them by such will. (2 R. S., 65, § 49.)

This action is a consolidated one, made by joining two, that were brought, under and pursuant to, two sections of the Revised Statutes. (2 R. S., 456, §§ 64, 65.) One was brought to compel a distribution of the personal estate of the deceased, so the plaintiff will receive his share of the same. The other was brought to compel a partition of the real estate left by the deceased, and devised to the defendants, between such devisees and the plaintiff, so that he will have his share of such real estate, and so as to enforce a just and proportionate contribution by each devisee.

The consolidated action was tried before a referee. The deceased, before he made his will, conveyed several pieces of real estate to his two sons, William A. and Joseph H. Sanford, who are defendants in the action; which pieces of real estate the plaintiff claimed were advancements to them by the deceased. . The plaintiff also claimed that the deceased gave William A. Sanford $3,000, to enable him to start in business; and he claimed that such $3,000 was an advancement.

The most important question in the case is, whether the several pieces of real estate and the $3,000, above mentioned, were advancements within the meaning of the statutes, by

Sanford *v.* Sanford.

which it is provided that "if any child of such deceased person shall have been advanced by the deceased, by settlement or portion of real or personal estate, the value thereof shall be reckoned with that part of the surplus of the personal estate which shall remain to be distributed among the children ; and if such advancement be equal or superior to the amount which, according to the preceding rules, would be distributed to such child as his share of such surplus and advancement, then such child and his descendants shall be excluded from any share in the distribution of such surplus." (2 R. S., 97, § 76.)  "But if such advancement be not equal to such amount, such child, or his descendants, shall be entitled to receive so much only as shall be sufficient to make all the shares of all the children, in such surplus and advancement, to be equal, as near as can be estimated."   (Id., § 77.) " The maintaining or educating, or the giving of money to a child, without a view to a portion or settlement in life, shall not be deemed an advancement within the meaning of the two last sections; nor shall those sections apply in any case where there shall be any real estate of the intestate to descend to his heirs."   (Id., § 78.)

It is further or again provided by statute as follows: " If any child of an intestate shall have been advanced by him, by settlement or portion of real or personal estate, or of both of them, the value thereof shall be reckoned, for the purposes of this section only, as part of the real and personal estate of such intestate descendible to his heirs, and to be distributed to his next of kin, according to law ; and if such advancement be equal, or superior, to the amount of the share which such child would be entitled to receive, of the real and personal estate of the deceased, as above reckoned, then such child and his descendants shall be excluded from any share in the real and personal estate of the intestate."   (1 R. S., 754, § 23.)   " But if such advancement be not equal to such share, such child and his descendants shall be entitled to receive so much only of the personal estate, and to inherit so much only of the real estate, of the intestate, as shall be sufficient to

Sanford *v.* Sanford.

make all the shares of the children, in such real and personal estate and advancement, to be equal, as near as can be estimated." (Id., § 24.) "The value of any real or personal estate, so advanced, shall be deemed to be that, if any, which was acknowledged by the child by an instrument in writing; otherwise such value shall be estimated according to the worth of the property when given." (Id., § 25.) "The maintaining or educating, or the giving of money to a child, without a view to a portion or settlement in life, shall not be deemed an advancement." (Id., § 26.)

There is another section of the Revised Statutes which is applicable to the last four sections above quoted. It is as follows: "Every estate or interest given by a parent to a descendant by virtue of a beneficial power, or of a power in trust with a right of selection, shall be deemed an advancement to such descendant within the provision of the second chapter of this act. (1 R. S., 737, § 127.)

The plaintiff's rights are the same as they would have been if his father had never made a will and had died intestate. (2 R. S., 65, § 49 ; id., 456, §§ 62 to 65 inclusive.)

In no case can a child, born after the making of a will by his father, recover of any brother or sister, born before the will was made, any portion of any advancement his father made in his lifetime to such brother or sister. Hence the advancements in this case are to be considered only for the purpose of determining whether the defendants, Wm. A. Sanford and Joseph H. Sanford, shall have any portion of the real and personal property left by the deceased and devised to them; or if they are to have a portion thereof how much they shall have.

The point has not been made that advancements, made by the deceased to the defendants or either of them, cannot be considered in making a distribution of the surplus of the personal estate of the deceased after payment of his debts, because there was "real estate of the intestate to descend to his heirs." (2 R. S., 98, § 78 ; see *Hicks* v. *Gildersleeve*, 4 Abb., 1.)

Sanford *v.* Sanford.

It cannot be doubted that every advancement is a gift, or that every gift is not an advancement, and upon the naked fact that a father buys and pays for land and has the deed made to his child, the inference of law is, that it is an advancement to the child. (See *Proseus* v. *McIntyre*, 5 Barb., 424 ; *Welton* v. *Divine*, 20 id., 9 ; 2 Beavan's Rep., 447; *Partridge* v. *Havens*, 10 Paige's Ch. Rep., 618.) And I am of the opinion, when a parent conveys land to his child without asking or receiving any consideration therefor, the presumption is that it is an advancement to the child, though the deed recites a money consideration and contains an acknowledgment of the payment of it. According to our statutes (*supra*) if any child of a deceased person shall have been advanced by the deceased, " by settlement or portion of real estate," the value thereof shall be deemed an advancement, except that " the maintaining or educating, or the giving of money to a child, without a view to a portion or settlement in life, shall not be deemed an advancement." (2 R. S., 98, § 78 ; 1 id., 754, § 26.) Small, inconsiderable sums of money, occasionally given to a child to spend or defray expenses in traveling, or to pay for small presents and the like, should be deemed to have been given " without a view to a portion or settlement in life," and are not to be regarded as advancements. (3 P. Williams' Reps. 318, note *o*.) But a considerable sum of money given a son, to enable him to start in business, is *prima facie* an advancement; and I think every considerable sum of money given to a child to use in business should be deemed an advancement; unless proved to have been given " without a view to a portion or settlement in life." (Id., and *Edward* v. *Freeman*, 2 id., 449 ; see *Chase* v. *Ewing*, 51 Barb., 597.)

Now, within these rules, all the land that the deceased conveyed to his sons, William A. and Joseph H. Sandford, as gifts, without receiving or expecting any consideration therefor, and also such land as the deceased paid for, that was conveyed to such sons by third persons, were advancements. And if the deceased gave his son, William A.

Sanford, $3,000 in money or chattels to start him in business, the same was an advancement. (*McRae* v. *McRae*, 3 Bradford, 199.)

The defendants did not give any evidence that conclusively overcame the presumption that the parcels of land conveyed to them were to be deemed advancements. We must therefore hold they were advancements; subject, however, to the question, whether the referee committed any error in admitting or rejecting evidence respecting the same. For the defendants had the right to prove facts and circumstances to show that such parcels of land were not advancements.

The defendants offered to prove by the defendant William A. Sandford, who was sworn as a witness in the action, that he overheard a conversation one New Year's day, on which day two deeds to defendants of real estate were dated, and that in such conversation the deceased said to one Benson: "I have this morning made each of my sons a present of a house and lot as a New Year's present." The offer was rejected on the ground that the witness was incompetent to prove the declarations of the deceased, and the defendants excepted. I am inclined to the opinion that the witness was competent to testify to what the defendants offered to prove by him, for the reason that the offer was not to have the witness testify "in regard to any personal transaction or communication between such witness" and the deceased, which is prohibited by section 339 of the Code. (See *Simmons* v. *Sisson*, 26 N. Y. Reps. 264.) But I think the evidence offered was hearsay, and that it would not, if it had been received, have tended to establish that the houses and lots were not advancements. They were advancements, though they were presents or gifts. This ruling of the referee, if incorrect, was therefore immaterial, and did no harm to the defendants. But were it harmful, the finding of the referee, that the deceased made such a statement to Benson at a subsequent time, would not render such ruling immaterial.

The plaintiff proved, by one Nelotte and one Gorrie, that a

Sanford *v.* Sanford.

short time before the death of the deceased he said to them, on different occasions, "I have given each of my sons (meaning defendants) $20,000 or $25,000, and I think they have had their share." The defendants objected in due time to this evidence, and excepted to the rulings of the referee admitting it.

It is not disputed that the declarations of the deceased, accompanying the conveyance of real estate to the defendants, or accompanying the giving of personal property to them, were competent evidence, as *res gestæ*, on the question whether such real estate or personal property were advancements. (See *Sidmouth* v *Sidmouth*, 2 Beavans, 447; *Morless* v. *Franklin et al.*, 1 Swanston, 13; *Hicks* v. *Gildersleve*, 4 Abb., 1; 5 Barbour, 424.) But such declarations are not admissible to contradict the plain terms and legal intendment of a writing governing the transaction. (*Chase* v. *Ewing*, 51 Barbour, 597.) The fact that a deed recites a money consideration as paid to the deceased does not prevent the plaintiff proving that no consideration was paid, to establish the fact that the land conveyed was an advancement. (*McCrea* v. *Purmort*, 16 Wendell, 460 · *Witbeck* v. *Waine*, 16 N. Y. Reps., 538.)

There are cases which hold that the declarations of a father, made subsequent to the execution of a deed of land to his son, or of a paper transfering personal property to him, may be proved against the son to support the presumption that the land or personal property was an advancement. But I am unable to see on what principle such declarations are admissible against the son. And I am so well satisfied that such declarations are not competent evidence against the son that I must hold that the declarations of the deceased in this case, made subsequently to the execution of the deeds to the defendants, or subsequently to the receipt of $3,000 by the defendant, William A. Sanford (if he received that sum), were not admissible evidence against the defendants. The deeds had been executed and delivered to the defendants, and the $3,000 had been paid over to William A. Sanford

(if that sum was ever paid him), before the declarations proved were made by the deceased. They were made when it was not in the power of the deceased to revoke or alter either of the deeds, or recover back the $3,000 or any part thereof. I think such declarations were mere hearsay, and therefore not evidence for the plaintiff. (See *Brown* v. *Mailler*, 2 Kernan, 118; *Severing* v. *Rittenhouse*, 4 Wharton, 130.) The admission of those declarations was a material error against the defendants, which has not been cured or obviated.

The plaintiff called William A. Sanford as a witness, and proved by him that he wrote and sent two letters to his father, which were put in evidence by the plaintiff's counsel. He was asked by the plaintiff's counsel as to whether some of the statements in the letters were true He answered in substance that he intended to tell the truth in the letters. In one of the letters was the following statement, viz.: " You have given me in business, as per your estimate, $3,000." In a subsequent part of the same letter in summing up what he had had of his father, was this statement, to wit: " Start in business $3,000." On the cross-examination of William A. Sanford he was shown the letter in which were the foregoing statements, and he was then asked what constituted the $3,000 start in business mentioned in that letter. To which the plaintiff objected that the witness was incompetent to testify, as it was a transaction between him and his father about which he had not been examined. The referee sustained the objection, and the defendants excepted. The defendants then offered to prove by the same witness that this $3,000 was not money or property, but merely recommendations of the witness to credit with persons of whom his father had formerly purchased. To which there was the same objection, ruling. and exception as last above mentioned.

I am of the opinion these rulings of the referee were erroneous. If the $3,000, mentioned in the letter of William A. Sanford, was not money or property, the same was not an a vancement to him. The letter, in which the admis-

Sanford *v.* Sanford.

sion was made, was proved by the witness on his direct examination by the plaintiff's counsel, and matters touching the letter were proved by such counsel that it would have been difficult, if not impossible, to prove by any other witness. Having proved such admission by this witness, the witness had the right (being a defendant in this action) to explain the admission, though it was in writing, and to entirely do away with its effect against him. If the plaintiff had proved by the witness that he had made a similar oral admission to the deceased, there could be no doubt that the witness would have had the right to explain the admission, and I think the same principle entitled the witness to explain the admission in his letter proved by him.

A year or two prior to the death of the deceased, the defendant, William A. Sanford, gave a promissory note for the payment of $5,000 to the order of the deceased and his wife, two years from its date, with interest. This note was in the possession of the deceased at the time of his death. The widow of the deceased presented the note to the appraisers of the personal property of the deceased, and it was appraised as part of his personal estate. The widow testified that she did not know and had not been advised until after such appraisal was made what her rights were in regard to the note. It was proper for her to testify to those facts.

The legal presumption was that the note belonged to the widow as survivor of the deceased, and was her property as against all other parties to this action, and it was immaterial whether the consideration for the note was advanced by the deceased or his wife to the maker. . (*Borst* v. *Spelman,* 4 Com., 284 ; 16 Mass. Reps., 479.)

By the will of the deceased he devised to his widow a dwelling-house ; also certain personal property, and $10,000 in cash, and the will recited that " all which is to be received and accepted by her in lieu of dower and every and all claims upon my estate."

Samuel B. Gordon was sworn as a witness for the defendants   He was an attorney and counselor, and was employed

by the deceased to draw his will, and did draw it. Previous to drawing the will he conferred and advised with the deceased about the terms of his will and the bequests he wanted to make. The defendants, William H. and Joseph H. Sanford, offered to prove by Mr. Gordon that in giving instructions for drawing the will, deceased first directed him to insert a bequest of the aforesaid note and $5,000 to his wife. That he, Gordon, suggested to him that there might be some difficulty about the note, and advised him to make a bequest of $10,000 to his wife in lieu of the proposed bequest. That the deceased consulted with his wife in regard to it, and, with her consent and concurrence, directed him, Gordon, to insert in his will a bequest of $10,000, personal, in lieu of the proposed bequest, and in full of all claims on his estate, which was done, " to which offer the plaintiff objected :" 1st. That the communications are privileged, having been made by the deceased to the witness in the course of his professional employment as an attorney. 2d. That the terms of the will are plain and cannot be explained by parol. 3d. That the evidence is immaterial, incompetent and inadmissible. The referee sustained the objection, and the defendants, William A. and Joseph H. Sanford, excepted.

The decision of the Court of Appeals in the action brought on the note by Maria D. Sanford (widow of the deceased) against William A. Sanford (maker of the note) shows that the second and third grounds of objection above stated were untenable (see opinion of PECKHAM, J., Mss.), and that decision establishes the fact that the evidence offered was competent and admissible in connection with other evidence that had been given. The only question therefore arising on this offer is whether the facts and circumstances therein mentioned were under the seal of professional confidence, which the witness could not disclose for the benefit of the defendant, who offered to prove them. This question is unlike either of the questions in the case relied upon by the plaintiff's counsel to sustain the decision of the referee. (See those cases in 3 Barb. Ch. Reps., 528 and 595 ; 18 N. Y.

Sanford v. Sanford.

Reps., 546.) The case is not like that of *Parker* v. *Carter*, (4 Mumford, 273), in which it was held that communications made to an attorney employed to draw a deed were privileged. I will remark that, in this case, the widow of the deceased did not object to the evidence offered to be given by Gordon. The substance of the offer was to prove by Gordon an agreement made between the deceased and his wife, and what was said by and between them, and to him in making the agreement; and that Gordon drew the will of the deceased in conformity with the agreement. The controversy in the action is between the widow and heirs-at-law of the deceased, all of whom, except plaintiff, are devisees named in the will of the deceased. I am unable to see any legal objection to the defendants, William A. and Joseph H. Sanford, proving the agreement by the attorney Gordon, in whose presence it was made. If he had been permitted to testify to it he would not have revealed any privileged communication, nor broken any seal of professional confidence. He would have proved an agreement in which the widow of the deceased and plaintiff were interested on one side, and the defendants, William A. and Joseph H. Sanford, sons of the deceased, were interested on the other side. In other words, the widow of the deceased was interested against his estate to decrease it, and the defendants, William A. and Joseph H. Sanford, were interested to increase it to the amount of the $5,000 note claimed by the widow. It seems to me there can be no doubt that the referee erred in rejecting the offer in question.

In ascertaining the interest the plaintiff has in the estate left by the deceased, the case is to be regarded as though the deceased had died intestate, instead of leaving a will. (2 R. S. 65, § 49.) The rule for ascertaining the rights of the plaintiff and defendants is stated in *Mitchell* v. *Blain* (5 Paige's Ch. Rep., 588), and I need not here state it again.

The allowance of costs to the plaintiff was a matter within the discretion of the referee.

But for the errors of the referee I have pointed out, the judgment in the action should be reversed and a new trial granted, costs to abide the event.

MILLER, P. J., and PARKER, J., concur.

New trial granted.