61b 172
50ad130

## MARY B. LYON and others, Executors, &c., *vs.* AUGUSTUS B. SNYDER.

A charge, by one partner against another, for his personal services in superintending and managing the affairs of the copartnership, cannot be sustained and allowed, without proof, on his part, of an express agreement that compensation should be allowed for such services.

A partner who has assigned all his interest in the copartnership to a copartner, is not a competent witness to prove such an agreement, in an action brought by the executors of a deceased partner, against the assignee, for an accounting, and to wind up the affairs of the copartnership.

Section 399 of the Code, which excludes every person through whom a party to an action derives "any interest, or title, by assignment, or otherwise," from being a witness against the executors of a deceased person, in regard to any personal transaction, or communication, between such witness and the deceased, must be construed to mean any interest, or title in, or to, the subject matter of the action. The assignor of any such title, or interest, is excluded from examination in the action.

The prohibition is not limited to an examination in respect to those matters pertaining to the parts of the action assigned, but extends to the entire action.

APPEAL, by the plaintiffs, from a judgment entered upon the report of a referee.

*Adams & Swan*, for the appellants.

I. A partner is not entitled to compensation for services, unless it is expressly agreed in the copartnership articles, that he shall have it. (4 *Abb. Dig. p.* 311, *No.* 194. *Story on Part.* §§ 182, 185. *Collyer on Part.* 171, *Perkins' ed.*

Lyon *v.* Snyder.

2 *Van Sant. Eq. Pr.* 207.) So the partner claiming it has the onus of showing an absolute and definite contract.

II. Up to December 31, 1867, the two Snyders were jointly interested, on the one side, to the extent of one half, and Lyon had the other half. If the transfer to, and assumption by, the defendant was but a continuation of the copartnership, (as originally formed,) and from that time the defendant was an equal partner, as both the Snyders had been, then H. D. H. Snyder, Jr., stands in every aspect as the defendant's assignor. If the transfer operated as a dissolution, and the business was afterwards carried on by a new concern, there is no proof whatever that there was any agreement for compensation to the defendant, in the new concern. There is no proof that the defendant was to be paid for his services, as alleged in the answer, and the evidence of H. D. H. Snyder should have been stricken out, as incompetent to sustain such claim. The defendant cannot recover for his half, without regard to any assignment; it is not a set-off. If the claim can be so split, the other partner might recover his portion of it. The plaintiffs' claim is, and must be based on this idea—that the defendant is the successor in interest of his brother by assignment, and so is entitled to the entire alleged compensation—for the whole time—for what they both did before December 31, 1867, and for what he has done since. H. D. H. Snyder is not competent to prove this claim; and his evidence allowed to be given in support of it was incompetent, and the plaintiffs' exceptions, both to its reception and to the refusal to strike it out, were well taken. Under sec. 399 of the Code, the defendant cannot testify "in regard to any personal transaction, or communication, between" him and Lyon, because the defendant is a "party" to the action. H. D. H. Snyder, Jr., cannot testify in regard to the like matters, because he is the person from, through and under whom A. B. Snyder ["any such person"] derives his (or a part

of his) interest in the claim and in the copartnership, and stands in the place of H. D. H. Snyder, Jr., and is within the clause, " derives any interest, or title, by assignment, or otherwise." The case is clearly within the reason and spirit of section 399. Lyon is not here to give his version of the contract made with the Snyders. The defendant, and his assignor, will have an advantage over the representatives of Lyon if H. D. H. Snyder, Jr., is allowed to testify. His evidence will take money from the estate of Lyon, which would not be the case if Lyon could be heard. In this connection, it is noteworthy that the defendant never produced this claim, nor entered it on the company books, till after Lyon's death.

III. So much of the judgment as allows this claim, should be reversed, and the judgment modified accordingly.

*G. W. Smith*, for the respondent.

I. As section 399 stands now, and stood at the trial of this cause, the defendant could not examine, in his behalf, against these executors, any party under whom he derived " any interest, or title, by assignment, or otherwise." But this respondent claimed nothing in the suit, and he takes nothing by the judgment, under the witness whose testimony was objected to.

II. The exception to the testimony of H. D. H. Snyder, Jr., is unfounded. 1. The claim of A. B. Snyder, the defendant, is not derived from the witness, H. D. H. Snyder, Jr. The original agreement was, that the firm should pay both Snyders a reasonable compensation for their direction of the business. No claim is made by the respondent, for any portion of what was earned by H. D. H. Snyder, Jr. The evidence shows that the defendant's services were worth $1500 per annum, and more. 2. The services of the two Snyders were not joint, as against Lyon, the third partner. They were several, each having

a right to claim against the firm, according to what he earned. This arrangement was founded on the clear equity of the transaction. Lyon furnished only half the capital, and devoted no time or labor to the business of the firm. The Snyders contributed as much, and assumed the entire management. Each was to be paid according to the extent of time and labor given to the business. The respondent had the entire charge of the practical operations of the business, H. D. H. Snyder, Jr., having only some general supervision, for which no charge is made. The fact that the respondent did most of this labor, and H. D. H. Snyder, Jr., but little, shows that the arrangement did not contemplate any joint claim of the two, against the firm, for these services. 3. Each of the Snyders, claiming upon his several *quantum meruit,* has an independent right of action therefor, and has no occasion to obtain any right from the other, by assignment.

III. The transfer of the share of H. D. H. Snyder, Jr., in the firm, to the respondent, wrought no change in the respective claims of each for personal services. The labor and oversight of the respondent were the same from the start, except that he bore an increased responsibility after the withdrawal of his brother. The amount allowed him in the judgment is the value of his individual services. He recovers nothing for the services of H. D. H. Snyder, Jr., 1. No claim is made in the answer for any services performed by H. D. H. Snyder, Jr., or on account of any assignment of any demands of his therefor. The respondent's claim is founded upon the agreement that " he shall receive a reasonable compensation from the said firm for his services." And he further claims, that " his personal services and his care and oversight, * * were reasonably worth $1500 per annum, over and above the services of his copartner, or copartners." 2. There is nothing in the answer, and nothing transpired on the trial, indicating that the respondent claimed anything under his brother.

The charge upon the books has reference only to the individual services of the respondent.

IV. If, in any aspect of the case, there was a transfer of a claim of H. D. H. Snyder, Jr., against the firm, it is sufficient to say that no such claim is made in this suit; it is not set up in the answer, and no proof was offered to sustain it. No inquiry was gone into touching the value of his services, and the referee has not taken their value into consideration. The only reasonable meaning of § 399 is that the person from whom the party to the record derives the claim litigated in the suit, cannot be examined in behalf of the party to the record to sustain such claim.

V. The agreement, for compensation to A. B. Snyder, remained the same, as between him and Lyon, after the retirement of H. D. H. Snyder, Jr. No new agreement was necessary to continue the obligation in favor of Snyder and against Lyon. The agreement ran to each severally, each being entitled to a claim on a *quantum meruit*, and in proportion to the services performed, and the defendant continued to perform the same and additional services, after Lyon and himself became the only copartners. The referee finds, as matter of fact, that Lyon and A. B. Snyder continued copartners under an agreement for compensation to Snyder, up to the time of Lyon's death.

VI. It is both the natural and legal presumption that the same arrangement for compensation continued, after the withdrawal of H. D. H., as before. It is to be presumed that Lyon assented to the defendant's acquiring the interest of his brother without any prejudice to his former right to compensation. The acquisition of this interest did not work any dissolution of the firm, as between Lyon and the defendant. And the referee finds that the firm remained unchanged in all other respects. 1. There is a legal presumption that the former status of things is preserved. On the determination of a particular term, if the

Lyon *v.* Snyder.

tenant hold over, the same rent, in the absence of other testimony, is presumed to be agreed between the landlord and tenant. And this kind of presumption is of frequent application. 2. Two or more proved to be copartners, are presumed to remain such until dissolution is shown. The merging of the interest of two of three copartners, does not affect this principle so as to change the rights of the partner acquiring an accession of interest. In this case, the defendant and Lyon remaining partners, it is a natural and satisfactory presumption that they continued together on the original terms. (1 *Starkie's Ev.* 1078.) 3. Whenever there is evidence on which a jury have founded a presumption, according to the justice of the case, the courts will not grant a new trial. (*Wilkinson* v. *Payne,* 4 *T. R.* 468.)

*By the Court,* JOHNSON, J. The only question in the case is as to the competency of H. D. H. Snyder as a witness for the defendant in the action. The action was brought to wind up and adjust the affairs of the copartnership of L. R. Lyon & Co. The plaintiffs are the executors of L. R. Lyon, deceased, who was a member of the copartnership, in his lifetime. Such copartnership was dissolved by the death of Lyon on the 7th of April, 1869, but its business, which was that of tanning hides, was not closed till February 1st, 1871, and the action is for a general accounting and settlement, and was referred, and tried by a referee. Accounts were mutually filed, and upon the trial the accounts, as filed and claimed by the respective parties, were agreed upon and admitted, except the defendant's charge for services for superintending and managing the affairs of the firm. He had had the sole care and management of all the partnership affairs, after the withdrawal of H. D. H. Snyder from the firm, and charged $1500 for his services, in pursuance, as he claimed, of an agreement between the parties, at the formation of the

copartnership, that himself, and his brother, the witness, who was also a partner at the commencement, should take the charge and management of all the copartnership affairs, and have a reasonable compensation from the firm for such services. H. D. H. Snyder, the witness, continued a member of the firm from its formation, July 26th, 1866, up to December 31, 1867, when he withdrew therefrom, with the consent of all parties, and assigned all his interest to the defendant, who took his share, and assumed all his liabilities as a member of the copartnership. In the commencement, the interest of Lyon was one half, and that of the two Snyders, one fourth each. But by the withdrawal and assignment before mentioned, the defendant and Lyon became equal partners, and the business was continued in the same firm name, until the death of the plaintiff's testator. H. D. H. Snyder, while he continued a member of the firm, assisted the defendant in superintending and managing the affairs of the copartnership, but no charge is made by the defendant for such services, in his account. The defendant claims the same price per year for his services for the entire period. He made no charge for his services, upon the books of the firm or elsewhere, that appears, until after the death of the testator, when the charges in question were made.

It is conceded, on the part of the defendant, and the rule undoubtedly is, that a charge of this description cannot be sustained and allowed without proof, on his part, of an express agreement that compensation should be made for such services. The only proof offered, of such an agreement, was the testimony of the witness H. D. H. Snyder, to the verbal agreement to that effect between the partners. He was objected to as an incompetent witness, under section 399 of the Code, and the exception to the rule admitting his testimony presents the question on which the appeal is brought.

By the provisions of this section, "no party to an action,

Lyon *v.* Snyder.

nor any person from, through or under whom any such party derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination deceased," &c., against the executor, &c. Had the witness continued a member of the copartnership and been a party to the action, as he necessarily would have been in that case, he would unquestionably have been incompetent. How, then, is he rendered competent by the fact of his assignment? The interest assigned enters into, and constitutes a part of, the subject matter of this action. The accounting is for the whole business and transactions, through the entire period. It embraces the dealings and accounts of the witness with the firm, while he was a member thereof, as well as those of the defendant, and the defendant, by the assignment to him, stands in the place of the witness, and is obliged to account for him in this action. His title to one fourth of all partnership assets is derived, by assignment, from the witness. The question involved in the litigation is, what proportion of all the assets belongs to the defendant, after an adjustment of all the accounts amongst all who were, at the death of the testator, or had previously been, members of the copartnership.

The Code excludes every person through whom a party to the action derives " *any interest or title,* by assignment or otherwise." This must be construed to mean any interest or title, in or to the subject matter of the action. The assignor of any such title or interest is excluded from examination in the action. It is argued, on the part of the defendant, that the witness had no interest in this particular charge and item of the account, and that his right to make it, and have it allowed, is not derived from the assignment, and does not depend upon it in any degree. This, perhaps, is not entirely clear; but conceding it fully, for the purposes of this point, it does not help the defend-

ant. The provision of the Code is broader. It excludes such a person from being examined as a witness in the action. The prohibition is not limited to an examination in respect to those matters pertaining to the parts of the action assigned, but extends to the entire action. He cannot be examined at all as a witness in that action, if the party has derived any interest or title from, through or under him. H. D. H. Snyder was, therefore, incompetent as a witness in the action on behalf of the defendant, as against the executors of the deceased partner, and the exception is well taken.

Perhaps upon another trial the defendant may be able to give other evidence of the agreement to make compensation for his services, and that opportunity should be afforded him. Should he elect, however, to abate and strike from the judgment the amount allowed for his services, the judgment should be affirmed; otherwise reversed, and a new trial ordered, with costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 18, 1871, *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]