Rapallo, J.
[After stating the facts.]—Questions are raised in respect to these conversations which are not free from difficulty ; but it is sufficient for the purposes of the present appeal, to pass upon the exceptions taken to the admission of the two conversations above particularly referred to.
We think these exceptions were well taken. Advice given by the plaintiff to Mr. Lord was a personal communication and transaction between them within the meaning of section 399, and, connected with the proof that Mr. Lord accepted and acted upon such advice, the evidence was material, and tended to maintain the issue on the part of the plaintiff. Mr. Lord’s remark about what he would have to pay his lawyers, turning towards plaintiff, appears to have been addressed to plaintiff, as well as to Mr. Thomas Lord, and may have satisfied the jury that Mr. Lord looked upon plaintiff as his lawyer throughout the transactions, and con-, ceded that he would have to pay him as such.
The remark to Mr. Thomas Lord about paying their lawyers, did not of itself amount to much. It derived its significance wholly from the alleged turning towards plaintiff, and thus giving him to understand that he was the party referred to. This, we think, was a personal communication within the intent of section 399.
*6 The superior court, at general term, in the opinion there delivered, concede that the admission of this testimony was error, but they hold that it could not have injured the defendants, because there was uncontradicted evidence in the case on which the jury would have been bound as matter of law to find for the plaintiff on the issue as to which the conversations of the deceased related.
There was undoubtedly evidence outside of these conversations, which would have justified the jury in finding that some part of the services rendered by the plaintiff were rendered by him, as attorney of Mr. Lord, and on his employment.
But there was also evidence tending to show that he was looking to the reward, and that the labor which he performed, or a part of it at least, was performed with the view of earning the reward. In his complaint he claims in one count for services rendered, and in the other the same sum as his proportion of the reward. If appears by his letter to Mr. Lord of May 18, 1869, that he undertook a suit against one Lynch for the recovery of some of the stolen bonds, on condition that if he did not succeed, he was to make no charge for his services, and in a subsequent letter relating to the same suit, he proposes to substitute another attorney therein, on payment of his costs, stating that in case of recovery, he would be entitled to the reward, but he prefers giving a substitution. And it also appears that in May, 1867, Mr. Lord paid him $500, for which he gave a receipt, not on account of services, but to be deducted from the first reward to which he might be entitled. The reward was a certain percentage on all bonds recovered. This evidence tends to show that he had the reward in view, and looked to this contingent compensation for part, if not all, of his services, the principal item of which was for advice, consultations, attendance, &c., while the conversation given in evi *7 dence- tended to show that Mr. Lord regarded him as his lawyer throughout, and entitled to pay as such. To sustain a verdict where evidence has been erroneously admitted, it must very clearly appear that no injury could possibly have resulted from the error. We cannot see this so clearly as to justify us in upholding the judgment on that ground.
Another insuperable difficulty, however, stands in the way of sustaining this judgment. The plaintiff, as before stated, claims in his complaint a portion of the reward, as well as compensation for services.
The court at the trial, after having charged the jury that if the plaintiff undertook the services with a view of receiving a part of the reward offered for the recovery of the bonds, and with that intention alone, the defendants would be entitled to the verdict, further added, at the request of the plaintiff’s counsel, that, even if the plaintiff stood on the reward alone, yet if the jury found that the bonds were recovered through plaintiff’s exertions, he was entitled to recover. The court had refused to charge, at the request of defendant’s counsel, that the plaintiff had failed to show that the return of the bonds, or any of them, was procured through the exertions or instrumentality of the plaintiff, and also that he had failed to show any right to recover any part of the reward.
The jury were therefore instructed, in substance, that they might render a verdict for part of the reward. We have carefully examined the testimony, and fail to find any evidence upon which such a verdict could be based. It was shown that the greater portion of the bonds had been recovered; but we do not find in the case a particle of evidence showing that the plaintiff brought about such recovery, or was entitled to any part of the reward.
The defendants were entitled to have the jury so instructed, and it was error to submit to the jury to *8 determine whether the plaintiff had earned any part of the reward.
The plaintiff appears to have rendered meritorious services, and it is to be regretted that this litigation should be prolonged, the case appearing to have already been twice tried. But the view we take of the legal questions raised, requires us to reverse the judgment and order a new trial, costs to abide the event.
All the judges concurred, Folg-er, J., in the result.
Judgment reversed and new trial granted, costs to abide event.
Note on Examination of Interested Witnesses against Representatives and Successors in Interest of Decedents and Lunatics (Code of Pro. § 399).
The laws of the American States generally recognize the sound policy of restraining the admission of the testimony of a party or interested witness, as against the estate of a deceased person or the interest of one succeeding to his right. The ground of the rule is that although parties and interested witnesses are made generally competent, an exception should be made where the adversary in the controversy is deceased. The law admits all parties; but when death silences one, the law will silence the other. The statutes for this pmpose are very diverse. Some reach the result by forbidding parties and interested witnesses from testifying where the opposite party is an executor or administrator. Others attempt to define the line with more discrimination. The New York statute in its present form (§ 399 of the Code of Procedure) is perhaps the most successful of these, and instead of applying to a particular class of actions, it is addressed directly to defining the evidence which ought to be excluded, in whatever action. It confines the prohibition to the actual source of danger, viz., the version by an interested person, of his interview with one who can no longer contradict him. To prevent evasion, the statute applies not only to parties on the record and parties having an interest in the result, but to assignors and others through whom a party claims. To prevent unequal application, it does not apply against one side when the other side has gone into the subject of the interview. These are the features of the New York statute.
*9 Construction of the pi'esent statute. The chief difficulty in the application of the statute is as to what is testifying ‘1 in regard to any personal transaction or communication between such witness, and,” &c. To clear up the apparent conflict between some of the cases, and make the present form of it significant, it will be useful to observe the following changes :
History of the changes. Previous to the year 1867, the language of the act excluded communications and transactions “had personally ” with the deceased. Under this provision it was held that the plaintiff, in an action against executors, was competent to prove the contents of a lost letter. This was not the species of testimony which the act intended to exclude. Williston e. Williston, 41 Barb. 635. In respect to personal interviews, it was at first held, that the fact that the deceased was present at an interview between the witness and a third . person, and was silent in respect to the transaction id. a matter affecting him or his interest, must be excluded. The silence, equally with the declarations, of the deceased, was held excluded. Fox ®. Clark, 61 Barb. 316, note.
But the court of appeals in Lobdell v. Lobdell, 36 IF. 7. 333, in effect, overruled this construction, and held that communications in presence of the witness, but wholly between the deceased and another, however the latter might be connected with the former, were not excluded; and that the law must be amended if communications in the presence of, but not “had personally” with, the witness or the deceased, were to be excluded.
In 1867 the legislature did accordingly interpose and amend the law, omitting the words “had personally,” and forbidding a witness to testify to “any transaction or communication between” the witness and a person since deceased, &c.
This provision was, of course, found too broad : under it the courts were obliged to exclude the testimony of a witness to letters which passed between them. Ressigue v. Mason, 58 Barb. 89.
Accordingly, in 1869 the law was again amended by changing the prohibition to “ any personal transaction or communication,” so that it now stands as follows:
“No party to any action or proceeding, nor any parson interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness ahd a person, at the time of such examination deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee, *10 or committee of such insane person or lunatic. But this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee,' survivor or committee shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence ” (Oode of Pro. § 399, as am’d by 2 L. 1809, p. 8201, c. 883, § 14).
The effect of the decisions which are applicable under the present state of the statute may be stated as follows. The cases are given more fully below.
Description of the witness. A party to any action or proceeding, even though called for a co-plaintiff or co-defendant,[1] and not on his own behalf, and even though he might have been sued separately[2] and though the court might in its discretion sever the action,[3] can not, so long as he remains a party,[4] be thus examined..
No person can be thus examined who is at the time of examination[5] interested in the event of the action, whether directly interested in the cause of action, or whether he is merely liable to be directly affected by the judgment, as, for instance, where he stands in such a position that the effect of a recovery in the action may be to aid the unsuccessful party in the action to bring and maintain an action against the witness for indemnity,[6] or, to take another instance, where the effect of a recovery may be to exonerate the witness from liability for a tort, by giving the plaintiff satisfaction from another person. But interest in the legal question is not enough.[7]
No person can be thus examined from, through, or under whom any such party or interested person derives any interest or title by assignment or otherwise.[8] Whether the interest or title thus derived must be an interest in the particular claim affected by the transaction or communication, is not settled.[9]
Objecting to the testimony. Witnesses within the foregoing description cannot be examined as to the matters below stated, even though they were competent at common law.[10] But when such a witness is offered, he should not be excluded merely because he is called against an executor, &c., &c.; unless it is clear that if sworn he could not testify to anything.[11] Strictly speaking, the incompetency is not that of the witness, but of his testimony to particular facts.
The examination is forbidden alike at the trial, and before trial or on deposition. Whether an affidavit by such a person is available on motion, has been questioned.[12]
The exclusion is of all examination in regard to any personal transaction or communication. In some cases, where the mere fact that a conversation was had between the witness and the deceased is *11 material, it might be error to allow the witness to state that fact even; but ordinarily, where the material fact is the substance of the communication itself, it would not be error to allow the examination to proceed so far as to state that an interview was had, without proving what was said or done.[13]

*14
The cases establishing the foregoing principles are as follows:

*11 In strictness, when it appears that the witness is about to testify to an interview where he and the deceased were present, the question whether the examination proposed relates to a personal transaction or communication between him and the deceased, is one of preliminary proof, addressed to the judge; and for the purpose of determining this question, the witness may testify either negatively or affirmatively as to whether anything passed between him and the deceased, and for this purpose may be asked such questions as are necessary to ascertain whether he merely over-heard the conversation, or whether he was privy to the communications made. Upon this question it would be competent for the objecting party, with the leave of the court, to interpose with evidence to contradict the testimony of the witness; and it would then be for the judge to determine whether his testimony to what passed at the interview was competent or not. But in ordinary practice, the examination is allowed to proceed as evidence for the jury, until it appears by the account given by the witness, that he is stating a personal transaction or communication between him and the deceased, and if this appears, all the testimony vitiated by this fact will be struck out, under a proper and timely objection.
A witness who is within the statute, on being inquired of generally as to a transaction between him and the deceased, by a question not indicating that the transaction was a personal transaction or communication between them, may properly be allowed to answer, reserving to the objecting party the right to move to strike out; and, if the answer does not show a personal transaction or communication,—for example, if it simply states that the witness had paid what was due to the deceased,—the testimony is not therefore to be excluded. But if, on cross-examination, the adverse party elicits the fact that the witness had been speaking in such testimony of transactions had personally with the deceased, the inadmissibility of the testimony becomes apparent, and it is properly to be stricken out. The fact that the cross-examination involved also details about the indebtedness already generally stated in the direct examination, does not preclude the cross-examining party from moving to strike, out the whole testimony, as to the interview, as incompetent under the statute.[14]
WI:at testimony is incompetent. The exclusion is not, however, *12 merely of testimony to prove what took place. All testimony in regard to an alleged or supposed personal transaction or communication is incompetent. It is equally incompetent to disprove as to prove. Testifying that there never was an interview is equally testifying ‘ ‘ in regard to ” the supposed communication, as is testifying to what took place.[15] At first thought this may seem inconsistent with what has just been said about testifying to the fact of an interview, when only the conversation is material, as well as inconsistent with the fact that the witness may testify as to whether or not the communication was personal, between him and the deceased; but the distinction, though refined, is clear. If what passed at the interview is the only material fact, a witness who testifies only that an interview was had, but does not say what passed, is not considered as having testified in regard to the alleged personal transaction or communication. But if he is allowed to testify that no interview ever took place, he does negative the supposed personal transaction or communication. Proving an interview merely, does not prove personal communication; but disproving all interview does disprove personal communication. Hence the rule that the witness cannot testify, even negatively, as to interviews.
What is a personal transaction, c6c. What constitutes a personal transaction or communication is not to be defined in the abstract, but to be determined on the circumstances of the case.[16] The principle on which the statute is founded, is the abuse which might result, if, when the lips of one party to an alleged interview have been sealed by death, the persons deriving from him rights which he held at the time of the interview, could be prejudiced by the testimony of interested persons, as to what took place, or did not take place between them there. The greatest danger of abuse would of course be in case of an alleged interview of which there were no other witnesses ; but the statute is not confined to such; the provision applies not merely to private communications, but to all personal communications, though in the presence of others who might be called as witnesses.[17] On the other hand, it applies only to such communications and transactions as involve the witness as a party thereto. The question is, are the circumstances such as to indicate that in the consciousness ' of the deceased and the witness, there was any privity between them in the transaction, as in the case in the text. If the witness merely overheard what was said between third persons, he is competent.[18] And this rule has been applied even where the conversation was an admission by the deceased of his previous transaction with the witness.[19] But if in even a part of the conversation the witness took part,[20] or even was included as one to whom the words *13 of the deceased were addressed, or- for whose ear they were in part intended, he cannot testify to that part, but may to any other part.[21]
The transaction, however, must be a personal one. A transaction solely with the agent of the deceased, is unaffected by the statute.[22]
jIndirect evidence. The exclusion, of course, is not to be evaded by questions of a general form, such as whether the witness was in the habit of borrowing from the deceased, where such habit might form a ground of presumption as to what passed at a supposed interview:[23] and the rule has been laid down, that a witness who cannot prove a personal transaction, is equally incompetent to prove any state of facts from which such transaction might be presumed.[24] But this needs qualification. The witness may prove the transaction by any circumstances which do not tend to do it by merely raising a presumption of a personal transaction or communication between him and the deceased. Thus he may testify to the admissions of the assignee or the heir, raising a presumption of payment to the ancestor.[25]
Incidents of a transaction, &c. The exclusion of the transaction or communication excludes all the incidents of it, such as what was done,[26] so far as they are connected with what affected the witness and the deceased together. This rule has been pressed so far as to exclude the witness from testifying to his own undisclosed intent in making a transfer to the deceased;[27] but the soundness of this conclusion is doubtful. Intent communicated to, or even legally presumable to have been shared by the deceased, could not be proved by the witness; but if the transfer is proven aliunde, an undisclosed intent may well be thought to be no part of the communication, or of the transaction between them, and, if material, competent.
Description of the incapacitated, party. The ground of the exclusion is the intervening incapacity of the other party to the personal transaction or communication; “a person at the time of such examination deceased, insane, or lunatic.” The death is sufficiently determined for this purpose \>y prima fade evidence.[28]
Where the incapacity is mental, a question may arise as to what degree of insanity will bring the case within the statute. The words of the statute do not require that the insanity be one intervening since the interview, although the chief object, doubtless, was to provide for such cases. At common law, insane persons are not absolutely disqualified. An insane person may be examined as a witness in a lucid interval, and may then testify even to what took place when he was insane, although the weight of his testimony is of course for the jury. Holcomb v. Holcomb, 28 Conn. 177. But even insane persons are not absolutely incompetent; but are admitted on *14 the ground of necessity, especially for their own protection, and for the redress of injuries to themselves. This exception from necessity, however, -is no just ground for making an implied exception from the statute. If the person is insane or lunatic within the meaning of the language of the rules of evidence as to witnesses, testimony of the interested witness should not be admitted under the statute.
Who may object to the evidence. The examination forbidden by the statute, is the examination of a witness “against the executor,[28] administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor,”[29] of the decedent, or the assignee or committee of the lunatic. The derivative title here referred -to is one held by the deceased at the time of the transaction and subsequently devolved upon the objecting party.[30] The words indicating the various personal relations and modes of succession nrotected by the statute, are liberally construed in furtherance of the equity of the rule,[31] and upon this principle any one claiming as a transferee, from a transferor since disqualified, is deemed an assignee,[32] and a husband, claiming by marital right of succession, has been treated as if he were next of kin to his wife.[33]
Effect of objecting party testifying on Ms otan behalf ¡ &c. Where the party for whose protection the statute declares the testimony incompetent, is examined in his own behalf as to the transaction or communication in question, or where the testimony of the deceased or lunatic, as to it, is given in evidence, the prohibition does not apply; and this qualification is to be taken in connection with the general principle, that a party who puts in evidence concedes the right of the adverse party to tread the same ground in rebuttal, so far as it can be done without violating a positive prohibitory statute.[34] But giving testimony as to one transaction or communication does not entitle the other party to disregard the prohibition in respect to a distinct and independent communication.[35] The offer of testimony, however, need not be confined to the disputable part of the adversary’s .testimony. In this case, as in case of the offer in the first instance, the witness may be sworn unless it appears that he could testify to nothing.[36]

 The prohibition is not in terms nor by construction confined to a party called as a witness in his own behalf. It prevents a plaintiff from calling out the testimony of a co-plaintiff to a transaction between the former and a person deceased, under whom defendant claims. Bennett v. Austin, 5 Hun, 636.

 So in an action by the executrix against the maker and the indorser of a note, one defendant cannot be examined, on behalf of the *15 other, as to a personal communication with the decedent. Alexander v. Butcher, 7 Hun, 489.

 Section 8 of L. 1832, c. 276,—which allows one of several parties to negotiable paper who are joined as defendants in one action under that act, to use any other such defendant as a witness the same as if separate actions were brought,—must be regarded as repealed by the Code of Procedure, so far as inconsistent. And if the adverse party is a personal representative, a maker who is a defendant cannot testify on behalf of an indorser who is defendant, to a transaction personally had with the deceased. It is only by severing the action (which rests in the discretion of the court), that the party in such case will be made competent. Fox v. Clark, 61 Barb. 216, note.

 In an action against the maker and indorsers of a note, commenced by the indorsee, but at the time of trial continued by and in the name of his executrix, the maker is not competent to prove that the note was infected with usury at the time it was made, nor that the time of payment had been extended by an agreement between the testator, in his lifetime, and the maker. The fact that the maker did not put in an answer, but suffered default, does not sever the action or discontinue it as to him. Genet v. Lawyer, 61 Barb. 211.
Nor does the fact that the indorsers executed a release to the maker affect the question. The defendants cannot, by any act of their own, change the statute, or take away the rights of the plaintiff under it. Ib.

 The fact that the witness had no interest at the time of having the personal transaction, &c., with the deceased, is not material. Farnsworth v. Ebbs, 2 Hun, 488; S. C., 5 Sup'm. Ct. (T. & C.) 1.

 Thus where an action is brought by the administrator of A against a constable, for levying an attachment against B’s property on the goods of A, the attaching creditors are parties interested in the event, within this rule. Wooster v. Booth, 2 Hun, 426.

 Where the testimony of the witness shows that on the transaction with the deceased, he was guilty of a conversion, from liability for which he will be relieved by a judgment against the assignee or successor in interest of the deceased, he cannot testify against such assignee or successor in interest. Andrews -a. Nat. Bank of North America of N. Y., 7 Sun, 20.
But interest in the legal question involved, though arising on the same state of facts, is not enough, where the proposed witness is not a party, and not necessary to be made a party, and is not interested in the event of the action. Thus where the question is whether a deed shall be set aside as against one heir, another heir, not a party, is not incompetent. Hobart v. Hobart, 62 S. T. 83.

 One who had been owner of chattels, and on transferring them became agent for his transferee, bailed them with defendants, without disclosing his agency. Held, that in his principal’s action against the defendants, he could not testify to a demand made on o'ne of them, since deceased. Conway v. Moulton, 6 Sun, 650.

 On this point compare the following cases:
A child who has been emancipated does not derive title to earnings by services subsequently rendered, from, through, or under the father, in such sense that the father is to be excluded as incompetent. Shirley ». Bennett, 6 Lana. 512.
In an action by the executors of a deceased partner, for an accounting and settlement of the partnership affairs, a partner who has assigned all his interest to a copartner is not a competent witness to prove an agreement, between the deceased and the assignee, to allow such assignee compensation for his personal services for managing the firm affairs. Lyon e. Snyder, 61 Barb. 172.
It makes no difference that the assignor had no interest in such charge and item of the account, and that the assignee’s right to make it was not derived from the assignment, and did not depend upon it in any degree. The prohibition of section 899 is not limited to an examination in respect to those matters pertaining to the parts of the cause of action assigned, but extends to the entire action. Lb.
By section 399, “every person through whom a party to the action derives any interest or title by assignment or otherwise,” in or to the subject-matter of the action, is altogether excluded from examination as to such communication, &c. Lb.
This last decision seems to go beyond the general purpose of the statute, which is that when adverse rights by succession are involved, one litigant shall not testify to a transaction with the deceased predecessor in title, invalidating or impairing the right or title of the other. Van Tuyl v. Van Tuyl, 8 Abb. Pr. S. 8., 5; S. 0., 57 Barb. 235. And the better doctrine is that indicated by Cary r. White, paragraph 30, below; that the test is succession to the title or right affected by the testimony.
Whether a widow, suing her husband’s grantee for dower, can testify to the marriage,—see Spicer v. Spicer, 16 AM. Pr. S. 8. 113, and note. And see paragraph 16, below.

 The act of 1867 made the testimony incompetent if the interest formerly owned by the witness might be affected by the event of the action, even though he would have been competent at common law. Mattoon n. Young, 45 N. 7. 696.

 A refusal to permit a party to be sworn in his own behalf, because the other party to the contract sued on is dead, is error, for *17 which the judgment should be reversed, unless it is clear that if sworn he could not have testified to any fact material to his case. Although he could not testify to the making of the contract, he might testify to admissions on the part of the heirs, or to other facts bearing on the existence of such a contract. Card v. Card, 39 H. 7. 317.

 Whether an affidavit can be made to facts to which the affiant could not testify under section 399,—Query. Gregory a. Gregory, 33 Super. Ot. (./. & S.) 1, 33. Compare Kirby n. Kirby, 1 Paige, 361; Ames t>. Merriman, 9 Wend. 498; Royal Ins. Co. @. Noble, 5 Abb. Pr. PT. S. 54.

 Evidence that a conversation was had between defendant and deceased, without proving the conversation itself, is not incompetent under section 399, unless, it seems, where the mere fact that a conversation was had was the material point. Hier ». Grant, 47 PT. Y. 378.
The ordinary test is, does the testimony tend to prove what the-transaction was which was had personally by him with the deceased.. [Code, § 399; 47 Barb. 586.] Strong v. Dean, 55 Barb. 337.

 Kerr v. McGuire, 38 N. Y. 446, 453.

 The party cannot be examined as to an alleged transaction with deceased, either negatively or affirmatively. Clarke ®. Smith, 46-Barb. 30; Dyer ®. Dyer, 48 Id. 190; Stanley ». Whitney, 47 Id. 586.
The rule excludes testimony that an alleged personal transaction or communication was never had. Thus it was held, that plaintiff, suing on a note made by a decedent, cannot be allowed to testify that it had not been paid. Howell v. Van Siclen, 5 Sura, 115. But this and the following ease are to be taken with some qualification. See Kerr ®. McGuire, 38 W K 453.
In an action to have the plaintiff’s conveyance to the defendant’s • devisor declared a mortgage,—Held, that the plaintiff’s testimony that he did not pay rent to said devisor was properly excluded under section 399 of the Code of Procedure. Barrett v. Carter, 3 Ians. 68.

 Upon an application to the surrogate, to revoke the probate of" a will, on the ground of the incapacity of the testator by reason of his being under the age of eighteen when the will was executed, the - mother of the testator is a competent witness to prove the time of his ■- birth. Birth is not a transaction between the parties, within section-399 of the Code. Matter of Paige, 63 Barb. 476.
As to marriage, see Spicer ». Spicer, cited in paragraph 9, above.
A physician is incompetent to prove his own attendance as such; upon the deceased, in support of his claim against the representative-for his compensation. Ross v. Ross, 6 Hun, 183.
Under the act as it stood before 1867, it was held that plaintiff’s- *18 testimony that he deposited the money sued for to the credit of the decedent, in the bank account of the latter, under a custom or arrangement by which he kept his funds in the decedent’s hands in this way,-—■Held, not testimony in respect to "transactions or communications had personally ” by him, with the deceased. Section . 399 of the Code was not designed to exclude the testimony of a party to an occurrence at which the deceased need not have been present, or a fact which he need not have known. Franklin v. Pinkney, 18 Abb. Pr. 186; S. C., 3 Robt. 439.

 “Personal” transaction, &c., does not mean private, and the fact that the party against whom the testimony is offered was also present and is living, and might be examined, is not a reason for allowing the witness to testify. Hatch v. Peugnet, 64 Barb. 189.

 The provision, as it stood in the Code of 1863, did not prohibit a party sued by an administra or from testifying to a conversation heard by him between the deceased and a third person. Such hearing is not a transaction between the deceased and the witness. (Per Rosecbans, J.) Simmons v. Sisson, 26 Bf. T. 264.
Section 399 does not exclude a party from testifying to the particulars of a transaction which took place between the deceased and a third person, in the presence of the witness. Lobdell v. Lobdell, 36 2T. T. 327; S. O., 4 Abb. Pr. S. 8. 56.
A statement of the deceased, made to a third person, and overheard by the witness, is not a personal transaction or communication between such witness and the deceased, prohibited by section 399. But it may be incompetent as being hearsay. Sanford v. Sanford, 61 Barb. 293.

 The mere hearing of a conversation between the deceased and another, although it referred to the witness, and contained the declarations of the deceased as to a previous transaction with the witness, and is offered as evidence of that transaction, is not excluded. [Citing 26 N. T. 264; 36 Id. 333.] Hildebrant t>. Crawford, 6 Bans. 502.

 Although overhearing a conversation in which the witness in no way participated is not a personal transaction or communication between him the deceased, yet if the witness went to the interview for the purpose of hearing it, and participated in the negotiation,— as where a wife went with her husband when he negotiated a loan on mortgage, and joined in the mortgage to release her dower,—the '.negotiation is a personal transaction or communication on her part. .Farnsworth v. Ebbs, 2 Hun, 438; S. C., 5 Supr’m. Ct. (T. & C.) 1.

 Section 399 does not preclude a witness from testifying to what '•took place between the deceased- and a third person, his counsel, *19 even though the witness participated in the conversation, if what is proposed to be proved is limited to what was neither a personal transaction nor a communication between the witness and the deceased. Cary ®. White, 59 N. T. 336.

 In Hildebrant ®. Crawford, 6 Ians. 502, a conversation and, contract made with the agent of one since deceased, was held not excluded.

 A witness cannot be asked if he was in the habit of borrowing money of the decedent. Alexander a. Butcher, 7 Sun, 439. But compare Kerr ®. McGuire, 28 S. Y. 452.

 Thus where an executor was not competent to prove payment to the deceased, of the claim in question, because a personal transaction, it was held that he could not testify to the fact that the deceased had no other sources of income than such payments, for this was only to raise a presumption as to transaction with deceased person which could not be raised by testimony directly to it. Jaques ®. Elmore, 7 Sun, 675. . '

 Thus, although a witness may be precluded from testifying to the personal making of a contact by him with the deceased, he may testify to admissions on the part of the adverse party, or other facts bearing on the existence of such a contract. Card®. Card, 39N. Y. 317.

 A party cannot testify even to the fact that he carried an inkstand with him when he had a personal interview with a deceased person, of whom the adverse party is the legal representative. [Code,- § 399.] Dubois ®. Baker, 30 N. Y. 355; affi’g 40 Barb. 556.
The fact that witness saw an instrument in the possession of the assignee of the deceased, is not excluded as a personal transaction, <fcc., between them. Smith ®. Sergent, 2 Sun, 107.
So the testimony of a party that he had seen the deceased sign a paper, was held a personal transaction, &c. in Denman ®. Jayne, 16 Abb. Pr. S. 8. 317. But this was on the authority of Bessique ®.- Mason, above cited, which has been superseded.

 When the intent of the witness or party examined, in acting on the transaction in question, becomes material, he cannot be asked his intent. The intent is a part of the transaction. Thus on the issue whether a transfer by witness to the deceased, was with intent to defraud creditors, he cannot testify as to his intent, as against the representative of the deceased. Tooley ». Bacon, 8 Sun, 176.

 After a representative plaintiff has given presumptive proof of death, by production of his letters, a party or adversely interested witness cannot testify to conversations with the deceased, had before the time of the alleged death, for the purpose of proving that he is still living. Parhan «. Moran, 4 Sun, 717.
*20 28 In a probate proceeding it was held that the Code, as it stood. in January, 1869, did not disqualify a widow who contested a will, from testifying, the heir-at-law being also a contestant. The person named as executor is not, before probate, regarded as executor, within the meaning of the statute as to testifying to communications. Dietrich’s Estate, 1 Tuck. 129.
The fact that the witness’s interest is in favor of the administrator against whom he is called, does not make him competent. Le Clare v. Stewart, 8 Hun, 127..

 In an action against one as a surviving partner it was held error to allow plaintiff, as a witness in his own behalf, to testify to conversations had between him and the deceased partner. Green v. Edick, 56 H. T. 613.

 To make the word “assignee” apply, the party deemed such must stand in succession in interest to the deceased. One who claims under a transfer made previous to the transaction or communication, is not an assignee within the statute. Cary ®. White, 59 H. T. 336.

 Thus where the action was by a son against the second husband of his deceased mother, to recover moneys he sent her while living, to keep for him, held that as the stepfather took the money either by assignment, by way of loan or gift, or as executor, the son could not testify against him to the agreement of the mother to keep the money for him. Mosner v. Eaulain, 66 Barb. 213.
One through whom a party to an action derives title is not a competent witness to prove transactions with a deceased person, as against a grantee of real estate from the latter. Grantees, though not named in section 399, are within the reason of the provision, and included in “assignees.” Mattoon v. Young, 45 H. T. 696.

 But one-taking as assignee of A by an assignment which B procured to be made for the purpose of securing the payment of a debt due from B, is not an assignee of B within the protection of the prohibition. Barney v. Equitable Life Assur. Soe., 59 H. T. 587.
A bank held blank certificates of stock as collateral security for a loan which its president procured to be made to a third person for his own benefit, and which stock the president borrowed from the third person and left with the bank, with the false representation that he, the president, took it as a collateral security for the loan. Held, that the bank held it as an assignee of the president, within the rule. Andrews v. Nat. Bank of N. Am., 7 Hun, 20.
If defendant in trespass justifies as having entered as the agent of the true owners who claim under a deceased person, plaintiff’s grantor *21 cannot testify against defendant to conversations with the deceased. Wheelock 0. Cuyler, 4 Hun, 414.

 Though the husband is not in strictness included in the term “next of kin,” of his wife, yet he is so included within the equity of the provision of section 899 of the Code of Procedure, which prohibits a party from being examined as a witness in his own behalf, in respect to transactions had personally with a deceased person, against persons who are next of kin, &c. Dewey ®. Goodenough, 56 Barb. 54.

 Where one party gave evidence of admissions made by the grantor of the other,—Held, that the grantor could testify to rebut this evidence, although it related to transactions with a deceased person through whom the former claimed title. Cole v. Denue, 3 Hun, 610.
Where testimony to oral declarations of the deceased was admitted, —Held, that counter declarations in writing were admissible. Smith ®. Christopher, 16 Abb. Pr. N. S. 333.
Plaintiff having put in evidence letters by defendant to a person since deceased,—Held, that defendant was entitled to give testimony explaining away the letters, although such testimony related to a transaction with the deceased. Sanford 0. Sanford, 61 Barb. 393.

 A surviving partner suing as such on a sale which was partly negotiated by personal communications between defendant and himself, and afterward consummated by personal communications between defendant and the deceased, may testify to the former communications, without thereby opening the way to allow defendant to testify to the latter, unless perhaps where the former testimony so refers to later communication as to make that necessary to explain. Goodwin 0. Hirsch, 37 Super. Ot. (J. & S.) 511.

 In offering defendant’s testimony it is not necessary to specify that he is offered as a witness to the same matter. If offered generally, as a witness, he should be sworn; but his examination should be restricted to the matters as to which the plaintiff’s assignor had testified. Unless he distinctly states that if he could not testify on other points he did not wish to be sworn, the court has no right to exclude him. Brown 0. Richardson, 30 H. Y. 473; rev’g 1 Bom. 403.
The fact that after an assignor has been examined on plaintiff’s behalf, defendant, instead of immediately cross-examining, moves a nonsuit, and upon its being denied, recalls the assignor for further examination, does not make the assignor his witness in such sense as to deprive him of the right to testify himself, contradicting the same matter. Parsons 0. Suydam, 3 E. I). Smith, 376.